## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AHMED AHMED <br> 1610 Mabry Mill Rd. <br> Houston, TX 77062, <br>     Plaintiff, <br> <br> v. <br> <br> ALEJANDRO MAYORKAS, <br> SECRETARY, DEPARTMENT OF <br> HOMELAND SECURITY, <br> <br> And <br> <br> IMMIGRATION AND CUSTOMS <br> ENFORCEMENT, <br>     Defendants. | **C.A. No:** <br> <br> **Complaint and Jury Demand** <br> <br> <br> <br> <br> <br> <br> DATE: December 7, 2021 |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USCA § 2000e *et seq.*, the Civil Service Reform Act ("CSRA"), 5 USCA § 7101 *et seq*, the Administrative Procedure Act ("APA"), 5 USCA § 551 *et seq*. Plaintiff AHMED AHMED, seeks declaratory, injunctive, and equitable relief; as well as back pay, front pay, compensatory damages, damages for his out-of-pocket pecuniary losses, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorney's fees and costs as a result of the adverse employment actions taken against him by his employer, the above-captioned Defendants in the instant Complaint. Plaintiff claims that he was subjected to a hostile work environment and terminated

1

by Defendants in violation of the Title VII, 42 USCA §§ 2000e-2(a), 2000e-2(b), 2000e-3(a), and 2000e-16(a), the CSRA Management and Employee Relations Act, 5 USC §§ 7513 , 7702 and 7703, the APA, 5 USCA § 551 *et seq.*, 5 USC §§ 701-706, 5 USCA § 2302, the Whistleblower Protection Act ("WPA"), the Whistleblower Protection Enhancement Act ("WPEA"), and 5 CFR § 752.404.

Plaintiff also alleges that the Defendants violated his due process rights. Plaintiff requests a trial by jury on all claims as permitted by law.

## PARTIES

1.   Plaintiff is a citizen of the United States and a resident of Houston, Texas.  His address is 1610 Mabry Mill Road, Houston, Texas 77062.

2.   At all times relevant to this action, his religion is Muslim and his national origin/ethnicity is Egyptian/Arab.

3.   Plaintiff timely filed a prior EEO action which was accepted by the by the EEO for investigation on or about May 17, 2017, ultimately identifying 14 claims after a subsequent amendment.

4.   On March 31, 2009, Plaintiff entered on duty with the agency as an Immigration Enforcement Agent, GL-1801-05, with a duty station of Houma, Louisiana. Prior to this appointment, he held the position of Customs and Border Protection Officer for the Bureau of Customs and Border Protection, New Orleans Field Operations. In October 2015, he became a Deportation Officer.

5.   Defendants United States Immigration and Customs Enforcement and Department of Homeland Security are executive Agencies of the United States government within the meaning of 29 USCA § 633a(a) and 5 USCA § 105.

6. The Department of Homeland Security is headquartered in Washington, D.C.

7. Defendant Alejandro Mayorkas is employed as the Secretary of the Department of Homeland Security. Defendant is being sued in his official capacity.

## JURISDICTION AND VENUE

8. Defendant Immigration and Customs Enforcement is also headquartered in Washington, D.C.

9. Defendant Immigration and Customs Enforcement is a federal law enforcement agency under the Department of Homeland Security.

10. At all times relevant to this action, Plaintiff's duty station was the Houma Resident Agent-In-Charge Office located at 1116 Bayou Lacarpe Road, Houma, Louisana 70363. As the Houma office was a small office, Plaintiff also worked under the New Orleans Field Office located at 1250 Poydras Street, Suite 325, New Orleans, Louisiana 70113. Both locations are within the jurisdiction of the Eastern District of Louisiana.

11. This action arises under Title VII, 42 USCA §§ 2000e-2(a), 2000e-2(b), 2000e-3(a), and 2000e-16(a), the CSRA Management and Employee Relations Act, 5 USC §§ 7513 and 7702, the APA, 5 USCA § 551 *et seq.*, 5 USC §§ 701-706, and 5 CFR § 752.404.

12. Plaintiff alleges that the Defendants subjected him to a hostile work environment and terminated his employment on the bases of his national origin, race,

3

religion, and reprisal for prior EEO activity in violation of Title VII, 42 USCA §§ 2000e-2(a), 2000e-2(b), 2000e-3(a), and 2000e-16(a).

13. Plaintiff further alleges that the Defendants terminated his employment without procedural and other due process.

14. Plaintiff further alleges that the Defendants terminated his employment for reasons that do not promote the efficiency of the Federal service in violation of 5 USC §§ 7513.

15. Jurisdiction over Plaintiff's claims of national origin, race, and religion in employment is invoked pursuant to 28 USCA § 1343, 42 USCA § 2000e-16, 5 USCA § 7702, and 5 USCA § 7703.

16. Jurisdiction over Plaintiff's claims of unlawful retaliation for filing his complaints of national origin, race, and religion discrimination in employment and other EEO activity is invoked pursuant to 28 USCA § 1343, 42 USCA § 2000e-16, 5 USCA § 7702, and 5 USCA § 7703.

17. Jurisdiction over Plaintiff's claims under the CSRA is invoked pursuant to 5 USCA § 7702 and 5 USCA § 7703.

18. Jurisdiction over Plaintiff's procedural due process claims is invoked under 5 USCA § 7702, 5 USCA § 7703, and 5 CFR § 752.404.

19. Jurisdiction over Plaintiff's claims of whistleblower retaliation and prohibited personnel practices is invoked pursuant to 5 USCA § 7702, 5 USCA § 7703, 5 USCA § 2302.

20. Plaintiff was terminated on or about on or about November 20, 2020; however, the Agency made the effective date of the termination July 6, 2018 (over two years earlier).

21. Plaintiff timely appealed this termination to the Merit Systems Protection Board ("MSPB") on December 18, 2020. This MSPB appeal contained the following claims as well: EEO claims of national origin, race, religion, and reprisal as well as whistleblower retaliation, and harmful procedural error as affirmative defenses. As such, the MSPB appeal qualifies as a "mixed case," and is subject to the procedural requirements of 5 USCA § 7702 and 5 USCA § 7703.

22. A hearing was held on April 21, 2021, April 22, 2021, and May 12, 2021 and on October 4, 2021, the MSPB issued an Initial Decision reversing the Agency's termination of Plaintiff. This Initial Decision became a Final Decision on November 8, 2021 since neither Party filed a Petition for Review.

23. Plaintiff now files the instant Complaint seeking *de novo* review of all claims allowable by law and judicial review of all claims not entitled to *de novo* review.

24. Under 5 USCA § 7702 and 5 USCA § 7703, Plaintiff has exhausted his administrative remedies and is free to pursue his mixed case in federal district court.

25. Declaratory, injunctive, and equitable relief is sought pursuant to 29 USCA § 633a, 5 USCA § 7702 and 7703, and 42 USCA §2000e *et seq.*, and the CSRA.

26. The action properly lies in the United States District Court for the Eastern District of Louisiana pursuant to 28 USCA § 1391(b) because Plaintiff's claims arose in this judicial district.

## FACTS

27. At all times relevant to this action, Plaintiff's first line supervisor was Jaime Crespo, Supervisory Detention and Deportation Officer.

28. From August 2015 to March 2017, the Plaintiff's second-line supervisor was John Milian, Assistant Field Office Director (AFOD).

29. Starting in March 2017, the Plaintiff's second-line supervisor was AFOD Brian Acuna.

30. Defendants have two relevant law enforcement divisions: Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI).

31. Plaintiff was assigned to the HSI Resident Agent in Charge (RAC) office in Houma, Louisiana.

32. Plaintiff was the only ERO employee assigned to that office, and he reported directly to Crespo.

33. Plaintiff worked in the agency's Criminal Alien Program (CAP).

34. His CAP duties involved screening or interviewing individuals at the two or three jails in the Houma area to determine who was foreign born and removable; and then transporting those individuals for processing to an agency facility.

35. The Houma office had a holding cell, processing area, and another office at the back of the building, and the Plaintiff was required to travel to the New Orleans ERO office.

36. In addition to supporting the jails in the Houma area, the Plaintiff provided deportation support to the HSI special agents who worked in the Houma office.

37. In 2015, Plaintiff was moved to the Enforcement Security Team (BEST), a task force comprised of state and local officials responsible for border security cases where the Plaintiff's role was to process and transport undocumented noncitizens who were apprehended in the course of investigations conducted by the special agents from the Houma office.

38. Plaintiff's work on BEST was in addition to his regular duties.

39. Plaintiff was assigned a government-owned vehicle (GOV), a Chevy Express 1500, for work and commuting.

40. The vehicle was used for transportation of individuals and contained window barriers and a partition behind the front seat.

41. Plaintiff's GOV made very loud noises, as the metal portions inside the vehicle rattled.

42. On March 7, 2016, the Plaintiff requested a new vehicle, stating he needed a new vehicle because his van was out of service, and his supervisor Crespo denied his request, stating, "that's all I can give you."

43. On May 21, 2016, the Plaintiff sent a text message to Crespo, with a video of him driving the vehicle and capturing the noise of the vehicle while driving, and stating, "Pots and pans. Drives me crazy lol."

44. On May 23, 2016, Bergeron, the HSI Resident Agent in Charge in Houma, sent the Plaintiff an email, informing him they needed his cubicle in the front of the office for a CBP officer who was going to be assigned to their office.

45. Thereafter, Crespo reported Plaintiff to the agency's Office of Professional Responsibility (OPR) which conducted an investigation.

46. On January 26, 2017, the Plaintiff sought Employment Opportunity Commission (EEO) counseling, alleging he had been subjected to discrimination and a hostile work environment based on his national origin/race (Egyptian/Arab), religion (Muslim), and in retaliation for complaining about discrimination, beginning in January 2015.

47. In January 2017, the Plaintiff began treatment with psychiatrist Peter Mahony for anxiety and depression.

48. On March 23, 2017, the agency's OPR completed its investigation.

49. On May 11, 2017, the Plaintiff filed a formal EEO complaint.

50. On November 6, 2017, the agency proposed the Plaintiff's removal due to charges of Absence Without Leave (AWOL), Lack of Candor, Falsification, Failure to Comply with Leave Procedures, and Improper Association.

51. The proposal stated the Plaintiff could submit a reply to David Rivera, Field Office Director, New Orleans.

52. On March 7, 2018, the Plaintiff submitted a written reply to Rivera.

53. In his reply, he stated that he was subjected to discriminatory and offensive comments, and that he complained to Crespo about these comments on April 13, 2016, during a midyear evaluation.

54. He acknowledged he was absent from the Houma office for the dates in question, but stated he was working off-site.

55. He stated he suffered from anxiety caused by unlawful workplace harassment, and he worked from home or other locations to avoid the harassment.

56. Plaintiff said his time and attendance records for the dates in question were accurate, and, although he was not working in Houma, he worked the hours listed (eight hours of regular time and two hours of overtime) in other locations.

57. On March 7, 2018, the Plaintiff presented an oral reply to Rivera.

58. As of May 15, 2018, the agency and the Plaintiff, who had been discussing settlement, reached an impasse.

59. On May 16, 2018, the parties resumed settlement discussions.

60. On or around June 2, 2018, the parties entered into a settlement agreement of the Plaintiff's pending EEOC complaint.

61. Pursuant to a material term of the settlement agreement, Plaintiff agreed to resign from his position, effective December 8, 2018, and withdraw his EEOC complaint.

62. Pursuant to the agreement, the agency processed the Plaintiff's resignation on December 8, 2018.

63. On March 12, 2020, the Plaintiff elected to void the settlement agreement after the EEOC's Office of Federal Operations found that the settlement agreement was based on a mutual mistake since it contained a clean record provision in violation of Executive Order 13839 and its implementing regulations.

64. On November 20, 2020, Diane L. Witte, Field Office Director, New Orleans, issued a letter to the Plaintiff, removing him effective July 6, 2018, and providing him with appeal rights.

65. The Plaintiff's resignation SF-50, effective December 8, 2018, was replaced by one reflecting his removal, effective July 6, 2018.

66. This action was effectuated on or around December 3, 2020.

67. In her Decision letter, Witte described that Rivera decided to remove the Plaintiff on May 15, 2018.

68. Witte relayed that the parties later reached a settlement agreement and described the compliance issues stemming from the agreement.

69. Witte concluded: "Having confirmed via telephone with FOD Rivera, now retired from the Agency, that he intended to remove you from your position for the charges of misconduct identified above, I hereby ratify his decision."

70. Witte did not discuss the charges in the proposed removal letter, the Douglas factors, or the reasons of either Rivera or Witte for removing the Plaintiff.

71. Before issuing this letter, Witte spoke with Rivera, who had retired from the agency in February 2019, and Rivera allegedly informed Witte that he intended to remove the Plaintiff based on the proposal issued on November 6, 2017, and that he would have removed the Plaintiff if the parties had not reached a settlement.

72. Witte did not read or review the Plaintiff's written or oral replies, and she did not consider the Douglas factors in ratifying the decision to remove the Plaintiff.

73. On December 18, 2020, the Plaintiff filed an appeal of the removal.

74. The Plaintiff asserted affirmative defenses of EEO retaliation, discrimination based on national origin/race (Egyptian/Arab) and religion (Muslim), whistleblowing retaliation, harmful procedural error, violation of due process, and violations of law.

75. From January 2015 through August 2016 a coworker would call Complainant a "terrorist," "Akhmed the dead terrorist," and "Egyptian lover."

76. A Special Agent at the Houma RAC office would then use these names as his regular title, sometimes laughing afterwards or saying the names in a mocking manner; during this

time, Complainant requested to work out of the New Orleans Field Office to avoid the harassment, and his request was denied by his Supervisory Detention and Deportation Officer (SDDO).

77. On April 4, 2016, Complainant verbally informed his Supervisory Detention and Deportation Officer (SDDO) about the extremely loud and constant noises in his vehicle and asked why he was not provided a newer vehicle, and the SDDP told him they "had names on them" which made Complainant believe that his "name" was an issue, and SDDO told Complainant that upper management "probably hates [him]." Complainant also informed the SDDO about harassment and a hostile work environment created by his coworkers, as well as not being offered overtime.

78. In May 2016, an email was sent to all CAP employees, except for Complainant, working under the same SDDO as Complainant offering paid weekend overtime opportunities (including AUO hours), and on May 20, 2016, Complainant inquired why he was not offered this opportunity as well as other opportunities to work collateral duties and explained he believed it was unfair behavior that was based on his different religious and ethnic background from the other employees at which time the SDDO then threatened to punish him if he ever tried complaining again about these issues and told Complainant that he had information on him that would make trouble for his career.

79. On May 23, 2016, Complainant's cubicle was taken from him and he notified his SDDO, and the SDDO initiated an OPR investigation against him.

80. On August 24, 2016, the SDDO threatened Complainant with retaliation if he continued complaining about the continuing discrimination, vehicle noise, desk issue, and lack of work opportunities.

81. On October 13 and 14, 2016, the SDDO made an unsubstantiated claim on Complainant's performance appraisal, was provided with a lower rating due to the fabricated claims, and was not given a performance award.

82. On October 26, 2016, Complainant was subjected to an OPR investigation.

83. On January 12, 2017, a co-worker while standing next to Complainant's SDDO called Complainant "Akhmed" and mispronounced his name in a mocking manner, while the SDDO did not ask him to stop and laughed.

84. On January 13, 2017, the SDDO cancelled transportation arrangements for two inmates that he was processing, and threatened to retaliate against Complainant for the two complaints Complainant filed against him.

85. On February 2, 2017, a co-worker asked Complainant if he wanted a pork donut in the presence of Complainant's SDDO, and the SDDO did not react, address, or prevent the hostile work environment Complainant was subjected to.

86. On February 16, 2017, a co-worker again called Complainant "Akhmed" and mispronounced his name in a mocking manner while the SDDO was standing a few feet away, and did not address the situation.

87. On March 1, 2017, Complainant was again interviewed by OPR for an allegation of misconduct initiated by the SDDO, and on May 1, 2017 Complainant received a case closure letter from OPR admitting that the investigative results did not support the allegations.

88. On May 2, 2017, the SDDO during a meeting with Complainant to discuss his co-workers discriminatory actions towards him, the SDDO ended the meeting threatening to place him on a leave restriction.

89. On May 18, 2017, the SDDO emailed Complainant a memo with assignments and directives that were not part of the mission, and required Complainant to physically drive to each jail that he covered under CAP, which included over 7 facilities and would take over 8 hours of diving time, and required Complainant to call the SDDO each day from his desk. On May 19, 2017, Complainant requested a meeting with the AFOD and the AFOD dismissed the directives in the memo the SDDO gave to him a day earlier.

## COUNTS I, II, III, AND IV
## NATIONAL ORIGIN, RACE, AND RELIGION DISCRIMINATION AND EEO RETALIATION,

90. Plaintiff incorporates by reference Paragraphs 1 through 89, inclusive, and all allegations contained therein.

91. Throughout his employment with Defendants, Plaintiff was subjected to a pattern of disparate treatment on the basis of his national origin, race, religion, and retaliation for EEO protected activity. The pattern of disparate treatment created a hostile work environment.

92. At all times relevant, the Responsible Management Officials (RMOs) were aware of Plaintiff's national origin, race, religion, and EEO protected activity.

93. These actions substantially interfered with important job functions of the Plaintiff and harmed his ability to perform his daily tasked and advance within the Agency.

94. These actions also ultimately resulted in an unlawful termination action, which also harmed the Plaintiff.

95. Defendant's pattern of disparate treatment of Plaintiff on the basis of his national origin, race, and religion constitutes a violation of 42 USCA §§ 2000e-2(a), 2000e-2(b), 2000e-3(a), and 2000e-16(a).

96. As a direct and proximate result of the Defendants' unlawful discrimination, Plaintiff has suffered substantial harm and is entitled to an award of damages, subject to proof at trial, as well as injunctive relief and declaratory relief.

97. Plaintiff seeks a trial by jury on all issues so triable, declaratory, injunctive, and equitable relief; as well as back pay, front pay, compensatory damages, damages for his out-of-pocket pecuniary losses, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorney's fees and costs as a result of the adverse employment actions taken against him by his employer.

COUNT V

WHISTLEBLOWER RETALIATION

98. Plaintiff incorporates by reference Paragraphs 1 through 97, inclusive, and all allegations contained therein.

99. Plaintiff was subjected retaliation for his protected whistleblowing activity.

100. The Responsible Management Officials (RMOs) were aware of his protected disclosures and retaliated against him as a result.

101. These actions substantially interfered with important job functions of the Plaintiff and harmed his ability to perform his daily tasked and advance within the Agency.

102. These actions also ultimately resulted in an unlawful termination action, which also harmed the Plaintiff.

103. As a direct and proximate result of the Defendants' unlawful retaliation, Plaintiff has suffered substantial harm and is entitled to an award of damages, subject to proof at trial, as well as injunctive relief and declaratory relief.

104. Plaintiff seeks a trial by jury on all issues so triable, declaratory, injunctive, and equitable relief; as well as back pay, front pay, compensatory damages, damages for his out-of-pocket pecuniary losses, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorney's fees and costs as a result of the adverse employment actions taken against him by his employer.

## COUNT VI

## PLAINTIFF'S TERMINATION DOES NOT PROMOTE THE EFFICIENCY OF THE FEDERAL SERVICE

105. Plaintiff incorporates by reference Paragraphs 1 through 104, inclusive, and all allegations contained therein.

106. The stated reasons for Plaintiff's termination in the Decision to Remove are discriminatory in nature or are a pretext for unlawful discrimination.

107. The Defendants have failed to establish that Plaintiff committed the conduct alleged in its Notice of Proposed Removal.

108. The Defendants have failed to provide procedural and other due process to the Plaintiff regarding his removal action.

109. Additionally, the misconduct alleged by the Defendants in the Notice of Proposed Removal does not support Plaintiff's termination.

110. Defendants have failed to meet their burden of demonstrating that Plaintiff's termination will promote the efficiency of the service.

111. As a direct and proximate result of the Defendants' unlawful termination, Plaintiff has suffered substantial harm and is entitled to an award of damages, subject to proof at trial, as well as injunctive relief and declaratory relief.

112. Plaintiff seeks a trial by jury on all issues so triable, declaratory, injunctive, and equitable relief; as well as back pay, front pay, compensatory damages, damages for his out-of-pocket pecuniary losses, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorney's fees and costs as a result of the adverse employment actions taken against him by his employer.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AHMED AHMED, prays for all damages permitted under Title VII, 42 USCA §§ 2000e-2(a), 2000e-2(b), 2000e-3(a), and 2000e-16(a), the CSRA Management and Employee Relations Act, 5 USC §§ 7513 , 7702 and 7703, the APA, 5 USCA § 551 *et seq.*, 5 USC §§ 701-706, 5 USCA § 2302, the Whistleblower Protection Act ("WPA"), the Whistleblower Protection Enhancement Act ("WPEA"), and 5 CFR § 752.404, including but not limited to:

- Preliminary and permanent injunctive relief and declaratory relief as appropriate;

- Preliminary and permanent injunctive relief prohibiting future retaliation against Plaintiff and other similarly situated employees for lawful opposition to employment practices prohibited by Title VII, the WPA, and WPEA;

- A judgment declaring Defendants' conduct towards Plaintiff is in violation of Title VII, 42 USCA §§ 2000e-2(a), 2000e-2(b), 2000e-3(a), and 2000e-16(a), the CSRA Management and Employee Relations Act, 5 USC §§ 7513 , 7702 and 7703, the APA, 5 USCA § 551 *et seq.*, 5 USC §§ 701-706, 5 USCA § 2302, the Whistleblower Protection Act ("WPA"), the Whistleblower Protection Enhancement Act ("WPEA"), and 5 CFR § 752.404;

- An Order requiring Defendant's to immediately re-instate Plaintiff to his position at the level Plaintiff would have occupied but for Defendants' unlawful actions;

- An award of the costs and fees incurred by Plaintiff in bringing this action, including those incurred at the administrative level, as well as reasonable attorney's and expert witness fees, and pre-judgment and post-judgment interest;

- Compensatory damages, the exact amount to be determined at trial;

- Injunctive relief, a declaratory judgment, compensatory damages, and all other appropriate relief pursuant to his Title VII, WPA, and WPEA claims;

- Damages including all back pay and benefits;

- An award for the Plaintiff's costs and reasonable attorney's fees in this action;

- Compensation for damages to future employment;

- Such other and further relief as the Court may deem just and proper;

- Plaintiff also requests that the Court maintain jurisdiction over this matter until all remedial action has been taken by Defendants.

        Respectfully submitted,

        /s/ *Philip Bohrer*
        Philip Bohrer  (Bar Roll #14089)
        phil@bohrerbrady.com
        Scott E. Brady (Bar Roll #24976)
        scott@bohrerbrady.com
        **BOHRER BRADY LLC**
        8712 Jefferson Highway, Suite B
        Baton Rouge, LA  70809
        Telephone: (225) 925-5297
        Facsimile: (225) 231-7000

        -and_

        Stephen Goldenzweig (to be admitted *pro hac vice*)
        stephen@pinesfederal.com
        Pines Federal Employment Attorneys, PLLC
        10101 Fondren Road, Suite 575
        Houston, Texas 77096
        Telephone: (800) 801-0598 Ext 1002
        Facsimile: (888) 215-0397