## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AHMED AHMED** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 21-2260 "D" (4)** |
| **ALEJANDRO MAYORKAS, SECRETARY,** | * | **JUDGE VITTER** |
| **DEPARTMENT OF HOMELAND** | | |
| **SECURITY, ET AL** | * | **MAGISTRATE ROBY** |
| | * *  * | |

## DECLARATION OF CARY ELIZABETH ZUK

I, Cary Elizabeth Zuk, hereby declare under the provisions of 28 U.S.C. Section 1746 as follows:

1.  I am a Senior Attorney with the Office of Principal Legal Advisor (OPLA), U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security, in San Francisco, California.  In or about January 2021, I was assigned to represent the Agency during the administrative hearing of Mr. Ahmed's EEO complaint, Agency No. HS-ICE-00782-2017, EEOC No. 460-2020-00231X.

2.  Based upon my review of the record and pleadings during the administrative processing of Mr. Ahmed's EEO complaint, I declare under penalty of perjury that the foregoing is true and correct.

3.  On May 17, 2017, Lee M. Walker, Deputy Chief, Complaints and Resolution Division, Office of Diversity and Civil Rights (ODCR) issued a notice of claims accepted for investigation to Mr. Ahmed's attorney at that time.  *See* 5/17/17 Notice of Accepted Claims, attached hereto as Exhibit A-1.  Mr. Ahmed's complaint, which the notice of accepted claims summarizes, did not include a claim of race discrimination.  *See id.*

**Exhibit A**

4.    On May 30, 2017, Mr. Walker issued an amended notice of claims accepted for investigation to Mr. Ahmed's attorney at that time. *See* 5/30/17 Amended Notice of Accepted Claims, attached hereto as Exhibit A-2. Mr. Ahmed's amended complaint, which the amended notice of accepted claims summarizes, did not include a claim of race discrimination. *See id.*

5.    On November 6, 2017, the Agency served Mr. Ahmed with a notice proposing his removal for five charges of misconduct: (1) absence without leave (AWOL); (2) lack of candor; (3) falsification; (4) failure to comply with leave procedures; and, (5) improper association.

6.    On March 7, 2018, Mr. Ahmed submitted to Field Office Director (FOD) David Rivera a written reply to the notice proposing his removal. He also appeared on this date before FOD Rivera with his attorney at the time, Lynette Whitfield, Esq., to present an oral reply to the notice of proposed removal.

7.    Several weeks prior to May 15, 2018, FOD Rivera expressed to Agency counsel his inclination toward sustaining all of the charges and specifications of misconduct in the November 6, 2017 notice of proposed removal.

8.    On May 15, 2018, although the parties had made attempts to resolve the pending EEO complaint and adverse action, they reached an impasse on settlement. On this date, after learning that the parties had reached an impasse on settlement, FOD Rivera decided that removal was the appropriate penalty for Mr. Ahmed's misconduct and authorized Agency counsel to proceed with the preparation of a draft decision to remove Mr. Ahmed from his position and document his *Douglas* factor analysis in writing.

9.    The parties, through their counsel, resumed settlement negotiations shortly after FOD Rivera's May 15, 2018 decision to remove Mr. Ahmed for misconduct, bringing to a halt

the preparation of a letter documenting FOD Rivera's decision to remove Mr. Ahmed for misconduct and a record of his *Douglas* factor analysis.

10. On June 2, 2018, the parties entered into a fully-executed settlement agreement, whereby Mr. Ahmed agreed to resign in lieu of removal, on December 8, 2018, in return for the dismissal of his EEO complaint.

11. On October 19, 2018, consistent with the "noncompliance procedure" in the settlement agreement, Mr. Ahmed sent a letter to the Office of Civil Rights and Civil Liberties (CRCL) alleging that the Agency breached the settlement agreement in not expunging "removal-related documents from all files except those stated in the settlement agreement."

12. In a November 29, 2018 decision, CRCL determined that the Agency did not breach the settlement agreement.

13. On March 3, 2020, the EEOC's Office of Federal Operations (OFO) found that the settlement was premised on a mutual mistake of fact as to the legality and enforceability of the provision requiring it to rescind the notice of proposed removal and, therefore, provided Mr. Ahmed with the option to void the settlement.

14. On March 12, 2020, Mr. Ahmed notified ODCR of his decision to void the settlement.

15. On August 21, 2020, after the Agency reinstated his EEO complaint but had not canceled his resignation or reinstated him to his position, Mr. Ahmed petition the OFO for enforcement of its March 3, 2020 order providing him with the option to void the agreement.

16. On August 27, 2020, the Agency notified the OFO that it notified Mr. Ahmed that he had a right to request a hearing of his EEO complaint; that he requested a hearing; and, that it

processed his hearing request to return Mr. Ahmed "to the same point in processing prior to the settlement agreement."

17.   On September 4, 2020, satisfied that the Agency had complied with the March 3, 2020 OFO decision, OFO notified Mr. Ahmed that compliance monitoring had ceased.   In response, on this date, Mr. Ahmed asked the OFO to allow for compliance monitoring to continue until the Agency reinstated him, which he believed was necessary in order to return him to the *status quo ante*.   He also asked the OFO to docket his August 21, 2020 petition for enforcement.

18.   On September 21, 2020, the OFO notified Mr. Ahmed that the OFO would not docket his August 21, 2020 petition for enforcement and that he should "consider communicating all of the issues of this case with the Administrative Judge."

19.   On October 1, 2020, in lieu of addressing the issue of the Agency's failure to cancel the resignation in his record and reinstate him with the EEOC Administrative Judge, Mr. Ahmed filed an appeal with the Merit Systems Protection Board (MSPB), alleging that the Agency's failure to cancel the resignation in response to his decision to void the EEO settlement and the OFO's decision not to docket his petition for enforcement of the order providing him with the option to void the agreement rendered his resignation involuntary. The MSPB docketed this appeal under Docket No. DA-0752-21-0003-I-1.

20.   On November 20, 2020, the Agency notified Mr. Ahmed of its decision to effect FOD Rivera's decision to remove him for the misconduct the Agency placed him on notice of on November 6, 2017 and that he had previously responded to orally and in writing, cancel the December 8, 2018 resignation, and replace it with a removal action retroactive to July 6, 2018.

21.     On December 18, 2020, Mr. Ahmed filed an appeal with the MSPB to dispute the Agency's removal of him for misconduct retroactive to July 6, 2018.  The MSPB docketed this appeal as Docket No. DA-0752-21-0104-I-1.

22.     On March 18, 2021, Mr. Ahmed accepted a written offer of resolution "made in full satisfaction of the claims of employment discrimination that" he made in Agency No. HS-ICE-00782-2017, EEOC No. 460-2020-00231X.  *See* Offer of Resolution, attached hereto as Exhibit A-3.

23.     Accordingly, on April 8, 2021, EEOC Administrative Judge Nancy E. Graham ordered the dismissal of Agency No. HS-ICE-00782-2017, EEOC No. 460-2020-00231X with prejudice pursuant to the offer of resolution. *See* 4/8/21 Order of Dismissal with Prejudice, attached hereto as Exhibit A-4.

24.     On October 4, 2021, MSPB Administrative Judge Teresa Chung rendered a decision in Docket No. DA-0752-21-0104-I-1, finding that the Agency deprived Mr. Ahmed of due process in authorizing an official to ratify FOD Rivera's decision to remove Mr. Ahmed without considering the facts or analyzing the *Douglas* factors. *See* Exhibit A-5, Initial Decision.

25.     On October 4, 2021, MSPB Administrative Judge Teresa Chung also rendered a decision in Docket No. DA-0752-21-0003-I-1, finding that the MSPB lacked jurisdiction to consider whether the Agency's decision not to rescind the December 8, 2018 resignation constituted an involuntary resignation. *See* Exhibit A-6, Initial Decision.

Date

CARY E ZUK   Digitally signed by CARY E ZUK
              Date: 2022.06.02 13:18:54
              -07'00'

Cary Elizabeth Zuk

*Office of Diversity and Civil Rights*

**U.S. Department of Homeland Security**
801 I Street NW, Suite 800
8th Floor Mail Stop 5010
Washington, DC 20536-5010

MAY 17 2017



**U.S. Immigration
and Customs
Enforcement**

Delivered via email to: kcb@kennethbordes.com;  Ahmed.A.Ahmed@ice.dhs.gov

Mr. Kenneth C. Bordes, Esq.
Attorney at Law, LLC
2725 Lapeyrouse St.
New Orleans, LA 70119

     Re: Notice of Acceptance of Formal Complaint of Ahmed Ahmed v. John F. Kelly
     Secretary, U.S. Department of Homeland Security
     Agency Case No: HS-ICE-00782-2017

Dear Mr. Bordes:

This letter is in regard to the above referenced formal complaint of discrimination filed by your
client Ahmed Ahmed on May 11, 2017.   Please include the above referenced case number on all
future correspondence or other documents regarding this complaint.

### STATEMENT OF CLAIMS:

Whether the U.S. Department of Homeland Security, Immigration and Customs Enforcement,
discriminated against the Complainant based on his national origin (Egyptian/Arab), religion
(Muslim), and reprisal (prior EEO activity) when:

1. From January 2015 through August 2016 a coworker would call Complainant a "terrorist,"
"Akhmed the dead terrorist," and "Egyptian lover."  A Special Agent at the Houma RAC office
would then use these names as his regular title, sometimes laughing afterwards or saying the names
in a mocking manner; during this time, Complainant requested to work out of the New Orleans Field
Office to avoid the harassment, and his request was denied by his Supervisory Detention and
Deportation Officer (SDDO).

2. On April 4, 2016, Complainant verbally informed his Supervisory Detention and Deportation
Officer (SDDO) about the extremely loud and constant noises in his vehicle and asked why he was
not provided a newer vehicle, and the SDDP told him they "had names on them" which made
Complainant believe that his "name" was an issue, and SDDO told Complainant that upper
management "probably hates me [him]."  Complainant also informed the SDDO about harassment
and a hostile work environment created by his coworkers, as well as not being offered overtime.

3. In May 2016, an email was sent to all CAP employees, except for Complainant, working under
the same SDDO as Complainant offering paid weekend overtime opportunities (including AUO
hours), and on May 20, 2016, Complainant inquired why he was not offered this opportunity as well

<span style="color:red">**Exhibit A-1**</span>

Notice of Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e  **2**

as other opportunities to work collateral duties and explained he believed it was unfair behavior that was based on his different religious and ethnic background from the other employees at which time the SDDO then threatened to punish him if he ever tried complaining again about these issues and told Complainant that he had information on him that would make trouble for his career.

3. On May 23, 2016, Complainant's cubicle was taken from him and he notified his SDDO, and the SDDO initiated an OPR investigation against him.

4. On August 24, 2016, the SDDO threatened Complainant with retaliation if he continued complainant about the continuing discrimination, vehicle noise, desk issue, and lack of work opportunities.

5. On October 13 and 14, 2016, the SDDO made an unsubstantiated claim on Complainant's performance appraisal, was provided with a lower rating due to the fabricated claims, and was not given a performance award.

6. On October 26, 2016, Complainant was subjected to an OPR investigative interview resulting from misconduct allegations initiated by his SDDO.

7. On January 12, 2017, a co-worker while standing next to Complainant's SDDO called Complainant "Akhmed" and mispronounced his name in a mocking manner, while the SDDO did not ask him to stop and laughed.

8. On January 13, 2017, the SDDO cancelled transportation arrangements for two inmates that he was processing, and threatened to retaliate against Complainant for the two complaints Complainant filed against him.

9. On February 2, 2017, a co-worker asked Complainant if he wanted a pork donut in the presence of Complainant's SDDO, and the SDDO did not react, address, or prevent the hostile work environment Complainant was subjected to.

10. On February 16, 2017, a co-worker again called Complainant "Akhmed" and mispronounced his name in a mocking manner while the SDDO was standing a few feet away, and did not address the situation.

11. On March 1, 2017, Complainant was again interviewed by OPR for an allegation of misconduct initiated by the SDDO, and on May 1, 2017 Complainant received a case closure letter from OPR admitting that the investigative results did not support the allegations.

As background evidence in support of claim 1 Complainant also stated he sent his SDDO a tape recording of the vehicle sound on May 21, 2016, and a complaint in writing to upper management officials on October 11, 2016 due to the noise level that reached 98 decibels and was in violation of OSHA standards. Complainant stated he operated this vehicle for more than 4 hours a day, and the noise gave him anxiety, stress, headaches, and when he was medically examined on September 14, 2016, with an Ear, Nose, and Throat doctor he was diagnosed with hearing loss. Additionally, Complainant stated the vehicle he was given was only allowed to be used for prisoner transport and this prevented him from gaining crucial work experience that would help him with future promotions. Additionally, as background evidence in support of Complainant's claims on January 17, 2017, he sought the help of a psychiatrist and was suffering from anxiety disorder due to the issues at work.

Notice of Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e 3

Issues 1, 2, 3, 4, 5, 7, 8, 9, and 10 have been accepted for investigation.

This Office dismisses Claims 6 and 11 pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim as a collateral attack on the Office of Professional Responsibility (OPR). Please be advised the dismissed claims will not be investigated, and the dismissal of this/these claims are reviewable by an Administrative Judge or DHS if a hearing or a Final Agency Decision is requested, respectively, on the remainder of the complaint, *but it is not appealable until final action is taken on the remainder of the complaint.*

Claims 6 and 11 fail to state a clam in accordance with 29 C.F.R. § 1614.107(a)(1) as it is a collateral attack on the OPR process. It is inappropriate to use the EEO process to attack actions that occurred in another forum's procedural process and fails to state a claim under EEO regulations. A collateral attack involves a "challenge to another forum's proceeding, *i.e.,* grievance process, the EEO process in a separate case, the unemployment compensation process, the workers' compensation process, the tort claims process, and so forth." *Lau v. Nat'l Credit Union Admin.,* EEOC Request No. 05950037 (Mar. 18, 1996); *Wills v. Dep't of Def.,* EEOC Request No. 05970596 (Jul. 30, 1998); *Kleinman v. U.S. Postal Serv.,* EEOC Request No. 05940585 (Sept. 22, 1994); *Lingad v. U.S. Postal Serv.,* EEOC Request No. 05930106 (June 25, 1993). A collateral attack fails to state a claim under EEO regulations. The EEOC held on appeal in *Hernandez v. Dep't of Homeland Sec.,* EEOC Appeal No. 0120112400 (Nov. 1, 2011), alleging discrimination based on Complainant being the subject of an Office of Professional Responsibility (OPR) investigation is a collateral attack and fails to state a claim. The EEOC stated further, "the proper forum for Complainant to have raised her challenges to actions which occurred during the OPR proceeding was in that proceeding itself. It is inappropriate now to attempt to use the EEO process to collaterally attack actions which occurred during the OPR process." *Hernandez v. Dep't of Homeland Sec.,* EEOC Appeal No. 0120112400 (Nov. 1, 2011).

Accordingly, the matters alleged in Claims 6 and 11 are dismissed for failure to state a claim in accordance with 29 C.F.R. § 1614.107(a)(1).

If you believe that your client's claim has not been correctly identified, please provide to me written clarification within seven (7) calendar days after receipt of this letter, specifying why the claim has not been correctly identified. If a reply is not received within the specified time period, I will consider that you agree with the claim as defined above.

An investigation of the accepted claim will be conducted and completed within 180 days from the filing of the complaint. When the investigation is completed, this Office will provide you and your client with a copy of the Report of Investigation. At that time, your client will be notified of his right to request one of the following courses of action: (1) Final Agency Decision by DHS; (2) hearing before an EEOC Administrative Judge (AJ); or (3) file a civil action in an appropriate U.S. District Court. If your client requests a hearing, the AJ will process the complaint pursuant to 29 C.F.R. § 1614 and EEO MD-110, which are available at www.eeoc.gov.

An EEO investigator will be assigned to thoroughly investigate all aspects of the claims accepted for processing. The investigator has the authority to administer oaths and to require employees to furnish affidavits and/or interrogatories under oath or affirmation without a promise of confidentiality or, alternatively, by written statements under penalty of perjury. You and your client have a responsibility to cooperate with the investigator by timely scheduling an appointment,

Notice of Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e 4

meeting with the investigator and providing necessary written statements. Failure to do so may result in the dismissal of the complaint for failure to cooperate.

If you do not wish to pursue the complaint, the complaint may be withdrawn at any time by contacting the below named EEO point of contact.


RIGHTS AND RESPONSIBILITIES:

Please note that, any time after 180 days have elapsed from the filing of the complaint, your client has the right to request a hearing before an AJ by submitting a written request for a hearing directly to the
EEOC Office indicated in the acknowledgment letter this Office previously issued, with a copy provided to this Office. Alternatively, your client has the right to file a civil action in U.S. District Court at that time.

Your client is reminded that in order to amend his complaint prior to a hearing, he must submit a written statement to the Deputy Chief, Complaints and Resolution Division, Office of Diversity and Civil Rights, in order for the Agency to determine whether the proposed amendments are like or related to the allegations previously accepted for investigation.

Proposed amendments and requests to change accepted allegations should be sent to:

Lee M. Walker
Deputy Chief, Complaints and Resolution Division
Office of Diversity and Civil Rights
801 I Street NW, 8th Floor Mail Stop 5010
Suite 800
Washington, D.C. 20536-5010


To avoid possible dismissal of your client's discrimination complaint for failure to prosecute, he should promptly acknowledge receipt of all certified mail; provide this office with any change of address; cooperate with the EEO Investigator in the conduct of the investigation; and, if a hearing is requested, proceed with the hearing without undue delay. Failure to cooperate may result in dismissal of your discrimination complaint, pursuant to 29 C.F.R. § 1614.107(a)(7).

Please be aware that 29 C.F.R. § 1614.603 states that parties must make reasonable efforts to voluntarily settle the complaint throughout the process. For information regarding the U.S. Immigration and Customs Enforcement's Alternative Dispute Resolution program, or other resolution methods available to your client, please contact Jay Gauthier, ADR Program Manager, at 802-288-8782. Please note that the terms of any resolution/settlement, should one be reached, will be reduced to writing, and you and your client will be provided a copy.

Notice of Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e 5

If you or your client has any questions regarding this matter, please contact Courtney Emmerich, the
designated EEO point of contact, at (202) 732-0192 or at EEO-ADR-ICE@ice.dhs.gov.

Sincerely,

Lee M. Walker
Deputy Chief, Complaints and Resolution Division
Office of Diversity and Civil Rights

cc:  Complainant

**Office of Diversity and Civil Rights**

**U.S. Department of Homeland Security**
801 I Street NW, Suite 800
8th Floor Mail Stop 5010
Washington, DC 20536-5010



**U.S. Immigration
and Customs
Enforcement**

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing on the date
indicated below if sent via email or within five (5) calendar days after the date indicated below if
sent by regular or certified mail.  I certify that the foregoing Notice of Partial Acceptance was
provided to the following:

Mr. Kenneth C. Bordes, Esq.
*(Via Email:* kcb@kennethbordes.com*)*

Mr. Ahmed A. Ahmed
*(Via Email:* Ahmed.A.Ahmed@ice.dhs.gov*)*

Robert T. Helmey                               MAY 17 2017
_____              _____
ICE ODCR                                              Date

*Office of Diversity and Civil Rights*

**U.S. Department of Homeland Security**
801 I Street NW, Suite 800
8th Floor Mail Stop 5010
Washington, DC 20536-5010

MAY 3 0 2017



**U.S. Immigration
and Customs
Enforcement**

**Amended Partial Acceptance Letter**

Delivered via email to: kcb@kennethbordes.com; Ahmed.A.Ahmed@ice.dhs.gov

Mr. Kenneth C. Bordes, Esq.
Attorney at Law, LLC
2725 Lapeyrouse St.
New Orleans, LA 70119

> Re: Notice of Amended Partial Acceptance of Formal Complaint of Ahmed Ahmed v. John F.
> Kelly Secretary, U.S. Department of Homeland Security
> Agency Case No: HS-ICE-00782-2017

Dear Mr. Bordes:

This letter is in regard to the above referenced formal complaint of discrimination filed by your
client Ahmed Ahmed on May 11, 2017.  Please include the above referenced case number on all
future correspondence or other documents regarding this complaint.

### STATEMENT OF CLAIMS:

Whether the U.S. Department of Homeland Security, Immigration and Customs Enforcement,
discriminated against the Complainant based on his national origin (Egyptian/Arab), religion
(Muslim), and reprisal (prior EEO activity) when:

1. From January 2015 through August 2016 a coworker would call Complainant a "terrorist,"
"Akhmed the dead terrorist," and "Egyptian lover."  A Special Agent at the Houma RAC office
would then use these names as his regular title, sometimes laughing afterwards or saying the names
in a mocking manner; during this time, Complainant requested to work out of the New Orleans Field
Office to avoid the harassment, and his request was denied by his Supervisory Detention and
Deportation Officer (SDDO).

2. On April 4, 2016, Complainant verbally informed his Supervisory Detention and Deportation
Officer (SDDO) about the extremely loud and constant noises in his vehicle and asked why he was
not provided a newer vehicle, and the SDDP told him they "had names on them" which made
Complainant believe that his "name" was an issue, and SDDO told Complainant that upper
management "probably hates me [him]."  Complainant also informed the SDDO about harassment
and a hostile work environment created by his coworkers, as well as not being offered overtime.

<span style="color:red">Exhibit A-2</span>

Notice of Amended Partial Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e 2

3. In May 2016, an email was sent to all CAP employees, except for Complainant, working under the same SDDO as Complainant offering paid weekend overtime opportunities (including AUO hours), and on May 20, 2016, Complainant inquired why he was not offered this opportunity as well as other opportunities to work collateral duties and explained he believed it was unfair behavior that was based on his different religious and ethnic background from the other employees at which time the SDDO then threatened to punish him if he ever tried complaining again about these issues and told Complainant that he had information on him that would make trouble for his career.

4. On May 23, 2016, Complainant's cubicle was taken from him and he notified his SDDO, and the SDDO initiated an OPR investigation against him.

5. On August 24, 2016, the SDDO threatened Complainant with retaliation if he continued complaining about the continuing discrimination, vehicle noise, desk issue, and lack of work opportunities.

6. On October 13 and 14, 2016, the SDDO made an unsubstantiated claim on Complainant's performance appraisal, was provided with a lower rating due to the fabricated claims, and was not given a performance award.

7. On October 26, 2016, Complainant was subjected to an OPR investigative interview resulting from misconduct allegations initiated by his SDDO.

8. On January 12, 2017, a co-worker while standing next to Complainant's SDDO called Complainant "Akhmed" and mispronounced his name in a mocking manner, while the SDDO did not ask him to stop and laughed.

9. On January 13, 2017, the SDDO cancelled transportation arrangements for two inmates that he was processing, and threatened to retaliate against Complainant for the two complaints Complainant filed against him.

10. On February 2, 2017, a co-worker asked Complainant if he wanted a pork donut in the presence of Complainant's SDDO, and the SDDO did not react, address, or prevent the hostile work environment Complainant was subjected to.

11. On February 16, 2017, a co-worker again called Complainant "Akhmed" and mispronounced his name in a mocking manner while the SDDO was standing a few feet away, and did not address the situation.

12. On March 1, 2017, Complainant was again interviewed by OPR for an allegation of misconduct initiated by the SDDO, and on May 1, 2017 Complainant received a case closure letter from OPR admitting that the investigative results did not support the allegations.

13. On May 2, 2017, the SDDO during a meeting with Complainant to discuss his co-workers discriminatory actions towards him, the SDDO ended the meeting threatening to place him on a leave restriction.

14. On May 18, 2017, the SDDO emailed Complainant a memo with assignments and directives that were not part of the mission, and required Complainant to physically drive to each jail that he covered under CAP, which included over 7 facilities and would take over 8 hours driving time, and required Complainant to call the SDDO each day from his desk. On May 19, 2017, Complainant requested a meeting with the AFOD and the AFOD dismissed the directives in the memo the SDDO gave to him a day earlier.

Notice of Amended Partial Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e 3

As background evidence in support of claim 1 Complainant also stated he sent his SDDO a tape recording of the vehicle sound on May 21, 2016, and a complaint in writing to upper management officials on October 11, 2016 due to the noise level that reached 98 decibels and was in violation of OSHA standards. Complainant stated he operated this vehicle for more than 4 hours a day, and the noise gave him anxiety, stress, headaches, and when he was medically examined on September 14, 2016, with an Ear, Nose, and Throat doctor he was diagnosed with hearing loss. Additionally, Complainant stated the vehicle he was given was only allowed to be used for prisoner transport and this prevented him from gaining crucial work experience that would help him with future promotions. Additionally, as background evidence in support of Complainant's claims on January 17, 2017, he sought the help of a psychiatrist and was suffering from anxiety disorder due to the issues at work.

Issues 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13, and 14 have been accepted for investigation.

This Office dismisses Claims 7 and 12 pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim as a collateral attack on the Office of Professional Responsibility (OPR). Please be advised the dismissed claims will not be investigated, and the dismissal of this/these claims are reviewable by an Administrative Judge or DHS if a hearing or a Final Agency Decision is requested, respectively, on the remainder of the complaint, *but it is not appealable until final action is taken on the remainder of the complaint*.

Claims 7 and 12 fail to state a clam in accordance with 29 C.F.R. § 1614.107(a)(1) as it is a collateral attack on the OPR process. It is inappropriate to use the EEO process to attack actions that occurred in another forum's procedural process and fails to state a claim under EEO regulations. A collateral attack involves a "challenge to another forum's proceeding, *i.e.,* grievance process, the EEO process in a separate case, the unemployment compensation process, the workers' compensation process, the tort claims process, and so forth." *Lau v. Nat'l Credit Union Admin.,* EEOC Request No. 05950037 (Mar. 18, 1996); *Wills v. Dep't of Def.,* EEOC Request No. 05970596 (Jul. 30, 1998); *Kleinman v. U.S. Postal Serv.,* EEOC Request No. 05940585 (Sept. 22, 1994); *Lingad v. U.S. Postal Serv.,* EEOC Request No. 05930106 (June 25, 1993). A collateral attack fails to state a claim under EEO regulations. The EEOC held on appeal in *Hernandez v. Dep't of Homeland Sec.,* EEOC Appeal No. 0120112400 (Nov. 1, 2011), alleging discrimination based on Complainant being the subject of an Office of Professional Responsibility (OPR) investigation is a collateral attack and fails to state a claim. The EEOC stated further, "the proper forum for Complainant to have raised her challenges to actions which occurred during the OPR proceeding was in that proceeding itself. It is inappropriate now to attempt to use the EEO process to collaterally attack actions which occurred during the OPR process." *Hernandez v. Dep't of Homeland Sec.,* EEOC Appeal No. 0120112400 (Nov. 1, 2011).

Accordingly, the matters alleged in Claims 7 and 12 are dismissed for failure to state a claim in accordance with 29 C.F.R. § 1614.107(a)(1).

If you believe that your client's claim has not been correctly identified, please provide to me written clarification within seven (7) calendar days after receipt of this letter, specifying why the claim has not been correctly identified. If a reply is not received within the specified time period, I will consider that you agree with the claim as defined above.

Notice of Amended Partial Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e 4

An investigation of the accepted claim will be conducted and completed within 180 days from the filing of the complaint.  When the investigation is completed, this Office will provide you and your client with a copy of the Report of Investigation.  At that time, your client will be notified of his right to request one of the following courses of action:  (1) Final Agency Decision by DHS; (2) hearing before an EEOC Administrative Judge (AJ); or (3) file a civil action in an appropriate U.S. District Court.  If your client requests a hearing, the AJ will process the complaint pursuant to 29 C.F.R. § 1614 and EEO MD-110, which are available at www.eeoc.gov.

An EEO investigator will be assigned to thoroughly investigate all aspects of the claims accepted for processing.  The investigator has the authority to administer oaths and to require employees to furnish affidavits and/or interrogatories under oath or affirmation without a promise of confidentiality or, alternatively, by written statements under penalty of perjury.  You and your client have a responsibility to cooperate with the investigator by timely scheduling an appointment, meeting with the investigator and providing necessary written statements.  Failure to do so may result in the dismissal of the complaint for failure to cooperate.

If you do not wish to pursue the complaint, the complaint may be withdrawn at any time by contacting the below named EEO point of contact.

RIGHTS AND RESPONSIBILITIES:

Please note that, any time after 180 days have elapsed from the filing of the complaint, your client has the right to request a hearing before an AJ by submitting a written request for a hearing directly to the
EEOC Office indicated in the acknowledgment letter this Office previously issued, with a copy provided to this Office.  Alternatively, your client has the right to file a civil action in U.S. District Court at that time.

Your client is reminded that in order to amend his complaint prior to a hearing, he must submit a written statement to the Deputy Chief, Complaints and Resolution Division, Office of Diversity and Civil Rights, in order for the Agency to determine whether the proposed amendments are like or related to the allegations previously accepted for investigation.

Proposed amendments and requests to change accepted allegations should be sent to:

Lee M. Walker
Deputy Chief, Complaints and Resolution Division
Office of Diversity and Civil Rights
801 I Street NW, 8th Floor Mail Stop 5010
Suite 800
Washington, D.C. 20536-5010

To avoid possible dismissal of your client's discrimination complaint for failure to prosecute, he should promptly acknowledge receipt of all certified mail; provide this office with any change of address; cooperate with the EEO Investigator in the conduct of the investigation; and, if a hearing is requested, proceed with the hearing without undue delay.  Failure to cooperate may result in dismissal of your discrimination complaint, pursuant to 29 C.F.R. § 1614.107(a)(7).

Notice of Amended Partial Acceptance –Ahmed Ahmed v. John F. Kelly
Agency Case No.: HS-ICE-00782-2017
P a g e **5**

Please be aware that 29 C.F.R. § 1614.603 states that parties must make reasonable efforts to voluntarily settle the complaint throughout the process.  For information regarding the U.S. Immigration and Customs Enforcement's Alternative Dispute Resolution program, or other resolution methods available to your client, please contact Jay Gauthier, ADR Program Manager, at 802-288-8782.  Please note that the terms of any resolution/settlement, should one be reached, will be reduced to writing, and you and your client will be provided a copy.

If you or your client has any questions regarding this matter, please contact Courtney Emmerich, the designated EEO point of contact, at (202) 732-0192 or at EEO-ADR-ICE@ice.dhs.gov.

Sincerely,

Lee M. Walker
Deputy Chief, Complaints and Resolution Division
Office of Diversity and Civil Rights

cc:  Complainant

**Office of Diversity and Civil Rights**

**U.S. Department of Homeland Security**
801 I Street NW, Suite 800
8th Floor Mail Stop 5010
Washington, DC 20536-5010



**U.S. Immigration
and Customs
Enforcement**

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing on the date
indicated below if sent via email or within five (5) calendar days after the date indicated below if
sent by regular or certified mail.  I certify that the foregoing Notice of Amended Partial
Acceptance was provided to the following:

Mr. Kenneth C. Bordes, Esq.
*(Via Email:* kcb@kennethbordes.com*)*

Mr. Ahmed A. Ahmed
*(Via Email:* Ahmed.A.Ahmed@ice.dhs.gov*)*

_____
ICE ODCR

MAY 3 0 2017
_____
Date

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Houston District Office

|                                          |   |                                      |
|------------------------------------------|---|--------------------------------------|
| Ahmed Ahmed,                             | ) |                                      |
|     Complainant,     | ) |                                      |
|                                          | ) |                                      |
|                                          | ) | EEOC No.   460-2020-00231X           |
|                                          | ) | Agency No. HS-ICE-00782-20178        |
| v.                                       | ) |                                      |
|                                          | ) |                                      |
| Alejandro Mayorkas Secretary,            | ) |                                      |
| Dept. of Homeland Security,              | ) | Date: February 16, 2021              |
|     Agency.          | ) |                                      |
|                                          | ) |                                      |

## AGENCY'S OFFER OF RESOLUTION TO COMPLAINANT

To Lynette Whitfield, Esq., Complainant's attorney:

The Agency hereby extends to Ahmed Ahmed (Complainant), an Offer of Resolution in accordance with 29 C.F.R. § 1614.109(c) and Equal Employment Opportunity Commission (EEOC) Management Directive 110, chapter 6, section XIV. This offer of resolution is made in full satisfaction of the claims of employment discrimination that Complainant has made against the U.S. Department of Homeland Security, Immigration and Customs Enforcement (the Agency), in EEOC case number 460-2020-00231X, Agency complaint number HS-ICE-00782-20178. This offer includes all the monetary and/or non-monetary relief to which Complainant is entitled, including attorney's fees and costs.

Complainant's acceptance of this offer must be made in writing and postmarked or received in this office **within thirty (30) days of your** receipt of the offer. If Complainant accepts this offer, you must indicate your acceptance on the enclosed original offer by signing on the line appearing above your name and include the date of your acceptance on the line appearing adjacent to your name. You must also obtain the signature of Complainant, which should be placed on the line appearing above his name and include the date of his acceptance on the line appearing adjacent to his name. This offer will not be deemed to have been accepted without the signature of both you and Complainant. You should send or deliver your acceptance of the offer to the undersigned at the address specified below.

You should send your acceptance of the offer to the Agency's representative, Cary Zuk, Senior Attorney, U.S. Immigration and Customs Enforcement, 100 Montgomery St., Suite 200, San Francisco, CA 94104 (phone (415) 913-8608. Because of the pandemic and Ms. Zuk's telework status, please also e-mail the agreement to Cary.E.Zuk@ice.dhs.gov.

Exhibit A-3

Ahmed Ahmed – Offer of Resolution

If you do not accept this offer of resolution and the relief that you are eventually awarded by the Administrative Judge, or the Equal Employment Opportunity Commission on appeal, is less than the amount offered, **you will not receive payment for the attorney's fees or costs that you incur after the expiration of the 30-day acceptance period for this offer.** The only exception to this rule is where the Administrative Judge or Commission rules that the interests of justice require that you receive your full attorney's fees and costs. An example of what may constitute an award of attorney's fees and costs in the interests of justice, despite rejection of an Offer of Resolution, would be where a responsible Agency official notified Complainant that the Agency would not comply in good faith with the offer of resolution (e.g., would unreasonably delay implementation of the relief offered.).

Please be assured, the Agency has every intention of complying with and promptly implementing this Offer of Resolution if it is accepted by you.

Terms of Offer of Resolution, including all monetary and non-monetary relief:

1) <u>Monetary payment</u>: The Agency will pay Complainant $200,000.00 dollars which shall include compensatory damages, attorney fees, and costs. The Agency shall make any payments required by this Offer of Resolution within 45-days of its receipt of Complainant's and his representative's acceptance of this Offer of Resolution and receipt of proof of reasonable attorney fees and costs incurred, or within 45-days of the Agency's receipt of payment instructions from Complainant or his representative, whichever is later.

2) <u>Consideration of discipline</u>: The Agency will consider disciplinary action against employees who Complainant identified in his complaint as having made remarks to him because of his national origin (Egyptian), religion (Muslim), or prior EEO activity, or managers who he identified as knowing about discriminatory remarks of his co-workers and failed to take adequate measures to address the harassment. For the employees who admitted in the investigative file to making a remark to Complainant because of his national origin and/or religion, the Agency will take disciplinary action against them. The Agency must follow its normal disciplinary procedures, in which the deciding official will ultimately decide on the appropriate discipline after providing the employee with notice of the charges of misconduct against him or her and an opportunity to respond. However, because all Agency employees have their own privacy rights under the Privacy Act Privacy Act of 1974, as amended, the Agency is precluded from disclosing to Complainant specific information regarding personnel actions involving other employees.

3) <u>Posting of Notice of Discriminatory Harassment</u>: Within 60 days from the effective date of this Offer of Resolution, the Agency will post a notice of a finding of discriminatory harassment, including unlawful remarks made because of a person's religion and/or national origin, having occurred in the unit and facility where Complainant used to work. The intent is for the notification to comply with 29 C.F.R. §1614.501(a)(1). As a result, the notification to all employees of the Agency in the affected facility will include a notification of their right to be free of unlawful discrimination and assurance that the particular types of discrimination found will not recur. The Agency will post this notice

Ahmed Ahmed – Offer of Resolution

in a conspicuous location where employee notices are usually posted at the facility where the Complainant's unit is currently housed.  In addition to placing the notice in the Houma facility where Complainant used to work, the Agency will place the notice in a conspicuous location in the New Orleans Office of Enforcement and Removal Operations.  The notice shall remain in place for 60 days.

4) <u>Training</u>:  The Agency will undertake the training of managers and employees who it considered for disciplinary action pursuant to paragraph 2) to educate them about the prohibition against discrimination and reprisal at work, their obligation to comply with Title VII of the Civil Rights Act and other laws designed to promote a work environment free of discrimination and reprisal, and the scope of their obligation to comply with those laws.  It will undertake that training within 60 days of the effective date of the Offer of Resolution.

5) <u>Effect of Offer of Resolution</u>:  Complainant's acceptance of the offer of resolution will fully resolve EEOC case number 460-2020-00231X, Agency complaint number HS-ICE-00782-20178 and result in the permanent cessation of the processing of his complaint.

6) <u>Status of Facsimile Copies</u>:  The parties agree that facsimile copies of this Offer of Resolution and the signatures herein, shall be deemed "originals," and shall have the same force and effect as an original copy of this Offer of Resolution.

7) <u>Effective date</u>:  Unless stated elsewhere herein, in which case the other designated effective date(s) will control, this Offer of Resolution shall be deemed fully executed on the date received by the Agency after it has been signed by the Agency's designated official and by both Complainant and his representative indicating their acceptance of this Offer of Resolution.

8) <u>Jurisdiction</u>:  The parties agree that if a dispute regarding this Offer of Resolution arises, to include allegations of a breach, unless otherwise precluded or limited by the terms of this Offer of Resolution, they will consent to the Equal Employment Opportunity Commission assuming jurisdiction over the matter.

9) <u>Noncompliance Procedure</u>:  If Complainant believes that the Agency has failed to comply with the terms of the Offer of Resolution, the Agency will not object to him seeking resolution directly with the Equal Employment Opportunity Commission. However, Complainant may also notify, in writing, the U.S. Department of Homeland Security ("DHS"), Office for Civil Rights and Civil Liberties ("CRCL") at the address indicated below of the alleged noncompliance within 30 calendar days of when Complainant knew or should have known of the noncompliance, and the matter will be processed in accordance with Title 29 Code of Federal Regulations, Part 1614.504. Unless stated elsewhere in this Offer of Resolution, money damages are not available to either party as a remedy for a breach of this Offer of Resolution.

a. Complainant may request that the Offer of Resolution terms be specifically implemented. Any noncompliance claims should be address to:

3

Ahmed Ahmed – Offer of Resolution

> U.S. Department of Homeland Security
> Office for Civil Rights and Civil Liberties
> Attn: Review and Compliance
> 2701 Martin Luther King Jr Ave SE
> Washington, D.C. 20528

b. If the Agency does not respond to Complainant's noncompliance claim in writing or Complainant is not satisfied with the Agency's attempt to resolve the noncompliance claim, Complainant may file an appeal with the Office of Federal Operations ("OFO") at:

> U.S. Equal Employment Opportunity Commission
> Director, Office of Federal Operations
> P.O. Box 19848
> Washington, D.C. 20036

Complainant may file an appeal with the OFO 35 calendar days after she has served the Agency, but she must file an appeal within 30 days of receipt of the Agency's response.

This Offer of Resolution is made by the following Agency official with authority to bind the Agency:

For the Agency:

COREY A
PRICE

Digitally signed by
COREY A PRICE
Date: 2021.03.19
19:02:44 -04'00'

Corey A. Price
Acting Executive Associate Director
Enforcement and Removal operations
U.S. Immigration and Customs Enforcement
For the Agency

Date: _____

Complainant and his representative, by signing and dating below, acknowledge their ACCEPTANCE of the Agency's Offer of Resolution, and their intent to be bound thereby:

For Complainant:

Ahmed Ahmed
Complainant

Date: _March 18, 2021_

4

Ahmed Ahmed – Offer of Resolution

Complainant's representative:

_____
Lynette Whitfield, Attorney at Law  JusTin SchniTzer, esq.
Complainant's Representative Date: 3/18/2021



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Houston District Office**

George Thomas "Mickey" Leland Federal Building
1919 Smith Street, 6th Floor
Houston, TX 77002-8049
Phone: 1-800-669-4000
Website: www.eeoc.gov

| | |
|---|---|
| Ahmed Ahmed, ) | |
| COMPLAINANT, ) | EEOC NO.      460-2020-00231X |
| ) | AGENCY NO. HS-ICE-00782-20178 |
| v. ) | |
| ) | |
| Ken Cuccinelli, Acting Secretary, ) | |
| Department of Homeland Security, ) | |
| ) | DATE:  April 8, 2021 |
| AGENCY. ) | |

## ORDER OF DISMISSAL WITH PREJUDICE AND NOTICE TO THE PARTIES

Notice is hereby given that the above-captioned case is **DISMISSED WITH PREJUDICE** pursuant to the executed Offer of Resolution, which the Complainant recently filed into the record.

## OTHER RESOLUTION OR SETTLEMENT NOTICE

If one party to an accepted offer of resolution believes that the other party has breached or failed to comply with the resolution reached during the EEO complaint process, the party should follow the terms of the accepted resolution, and where warranted, invoke the procedures for breach of settlement agreements contained in Title 29 of the Code of Federal Regulations, Section 1614.504.

If the Complainant believes there has been a settlement breach, these procedures first require the Complainant to notify the Agency, in writing, of the alleged breach within thirty (30) days of when s/he knew or should have known of the breach. If the Complainant is not satisfied with the Agency's attempt, if any, to resolve the matter, s/he may file an appeal with the EEOC's Office of Federal Operations to determine whether the Agency has complied with the terms of the settlement or agreed resolution. A complainant may file an appeal with the Office of Federal Operations (OFO) at EEOC either within 30 days of receiving a response from the Agency's EEO Office, or 35 days after filing the notice of breach with the Agency if the Agency has not responded within the 30-day notice period. The Office of Federal Operations would then review the matter and decide if the resolution has or has not been breached. When contacting the Office of Federal Operations regarding an allegation of breach, please attach a copy of this Order and a copy of the executed Offer of Resolution.

<span style="color:red">Exhibit A-4</span>

      **Do not send your allegation of breach to the Administrative Judge**. Your allegation of breach must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your allegation of breach to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your allegation of breach to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your allegation of breach to the agency.

      **WHERE TO FILE AN ALLEGATION OF BREACH**:

      All allegations of breach sent to the EEOC must be filed by mail, hand delivery or facsimile.

      **BY MAIL**:

            Director, Office of Federal Operations
            Equal Employment Opportunity Commission
            P.O. Box 77960
            Washington, D.C. 20013

      **BY PERSONAL DELIVERY**:

            Director, Office of Federal Operations
            Equal Employment Opportunity Commission
            131 M Street, NE
            Washington, D.C. 20507

      **BY FACSIMILE**:

            Number: (202) 663-7022
            Facsimile transmissions of more than ten (10) pages will not be accepted.

                      It is so **ORDERED**.

For the Commission:

                      *Nancy E. Graham*
                      Nancy E. Graham
                      Administrative Judge
                      U.S. Equal Employment Opportunity Commission
                      Houston District Office
                      New Orleans Field Office
                      Hale Boggs Building
                      500 Poydras Street
                      Suite 809
                      New Orleans, LA 70130
                      E-mail: nancy.graham@eeoc.gov
                      Direct Telephone: 504-635-2556

## **CERTIFICATE OF SERVICE**

For timeliness purposes, it shall be presumed that the parties received the foregoing **ORDER** within one (1) calendar day after the date that I sent it via email and/or uploaded it to FedSEP/the Public Portal. I certify that on April 8, 2021, I emailed the foregoing **ORDER** to the following addresses and/or uploaded it to FedSEP/the Public Portal:

Ahmed,
Complainant
Email: a84ahmed@gmail.com

Justin R. Schnitzer Esq.
Complainant's Counsel/Representative
Email: justin@pinesfederal.com

Cary Zuk, Esq.
Agency's Counsel/Representative
Email: cary.e.zuk@ice.dhs.gov

*/s/Nancy E. Graham*
Nancy E. Graham
Administrative Judge

END OF ORDER

EXTRA BLANK PAGE(S) MAY FOLLOW

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

| | |
|---|---|
| AHMED AHMED,<br>                  Appellant, | DOCKET NUMBER<br>DA-0752-21-0104-I-1 |
|      v. | |
| DEPARTMENT OF HOMELAND<br>    SECURITY,<br>                  Agency. | DATE: October 4, 2021 |

Justin Schnitzer, Esquire, Houston, Texas, for the appellant.

Cary E. Zuk, Esquire, San Francisco, California, Kate C. Brownlee, Esquire, New Orleans, Louisiana, and Michele Kenney, Esquire, San Diego, California, for the agency.

**BEFORE**
Theresa J. Chung
Administrative Judge

**INITIAL DECISION**

**INTRODUCTION**

On December 18, 2020, the appellant filed an appeal of his removal, effective July 6, 2018. Initial Appeal File (IAF), Tab 1. The Board has jurisdiction over this appeal pursuant to 5 U.S.C. §§ 7511-7513. I conducted a hearing on April 21, 2021, April 22, 2021, and May 12, 2021. HR, Tabs 60 and 65.

Based on the following analysis and findings, the agency's action is REVERSED.

<span style="color:red">Exhibit A-5</span>

## ANALYSIS AND FINDINGS

Background

On March 31, 2009, the appellant entered on duty with the agency as an Immigration Enforcement Agent, GL-1801-05, with a duty station of Houma, Louisiana.  IAF, Tab 49 at 52.  Prior to this appointment, the appellant held the position of Customs and Border Protection officer for the Bureau of Customs and Border Protection, New Orleans Field Operations.  *Id.*  In October 2015, the appellant became a Deportation Officer.  IAF, Tab 46 at 91.  The appellant's first line supervisor was Jaime Crespo, Supervisory Detention and Deportation Officer.  IAF, Tab 30 at 6.  From August 2015 to March 2017, the appellant's second-line supervisor was John Milian, Assistant Field Office Director (AFOD). *Id*.  Starting in March 2017, the appellant's second-line supervisor was AFOD Brian Acuna.  *Id.*

The agency has two law enforcement divisions: Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI).  The appellant was assigned to the HSI Resident Agent in Charge (RAC) office in Houma, Louisiana.  HR (Testimony of Appellant); IAF, Tab 46 at 70, 92-93, 95.  The appellant was the only ERO employee assigned to that office, and he reported directly to Crespo, who worked in the New Orleans Field Office.  HR (Testimony of Appellant, David Rivera); IAF, Tab 46 at 70.  The appellant worked in the agency's Criminal Alien Program (CAP).  IAF, Tab 46 at 70, 97.  *Id.*  His CAP duties involved screening or interviewing individuals at the two or three jails in the Houma area to determine who was foreign born and removable; and then transporting those individuals for processing to an agency facility.  IAF, Tab 46 at 92, 96-97; HR (Testimony of Appellant, Acuna).  The Houma office had a holding cell, processing area, and another office at the back of the building, and the appellant was required to bring individuals to the New Orleans ERO office by 3:00 p.m.  HR (Testimony of Appellant, Acuna, Blayne Bergeron, Lance Tingler). In addition to supporting the jails in the Houma area, the appellant provided

deportation support to the HSI special agents who worked in the Houma office. HR (Testimony of Appellant, Milian, Rivera, Acuna). In 2015, the appellant's supervisors granted his request to work on the Border Enforcement Security Team (BEST), a task force comprised of state and local officials responsible for border security cases; the appellant's role was to process and transport undocumented noncitizens who were apprehended in the course of investigations conducted by the special agents from the Houma office. IAF, Tab 46 at 94, 108-111; HR (Testimony of Bergeron); HR (Testimony of Acuna). The appellant's work on BEST was in addition to his regular duties. *Id.*

The appellant was assigned a government-owned vehicle (GOV), a Chevy Express 1500, for work and commuting. IAF, Tab 46 at 103. The vehicle was used for transportation of individuals and contained window barriers and a partition behind the front seat. HR (Testimony of Acuna). The appellant's vehicle made very loud noises, as the metal portions inside the vehicle rattled. HR (Testimony of Appellant, Acuna). On March 7, 2016, the appellant requested a new vehicle, stating he needed a new vehicle because his van was out of service, and his supervisor Crespo denied his request, stating, "that's all I can give you." IAF, Tab 48 at 85-86. On May 21, 2016, the appellant sent a text message to Crespo, with a video of him driving the vehicle and capturing the noise of the vehicle while driving, and stating, "Pots and pans. Drives me crazy lol." IAF, Tab 29 at 50-51, Tabs 70-71.

In February 2016, the appellant worked 16 days. IAF, Tab 46 at 139; IAF, Tab 53 (joint stipulation 9). The appellant did not go to the Houma office during that time, but monitored his assigned jails using his phone or computer at home or at a coffee shop, exercised, or may have gone to the New Orleans office. IAF, Tab 46 at 142-44. In March 2016, the appellant worked 22 days. *Id.* at 144-45. The appellant's GOV was not working during that time, and he went to the New Orleans office in his private vehicle if he needed to do work there, and monitored his jails from other places. *Id.* at 147-49. In April 2016, his GOV was in repair;

he worked 22 days that month, during which time he monitored his jails from outside the office, drove to New Orleans using his own vehicle, or exercised. *Id.* at 155. He did not go to the Houma office in April 2016. *Id.* at 156. In May 2016, the appellant worked 21 days, with only one or two days in the Houma office. *Id.* at 157-58. The appellant claimed 8 hours of regular time and two hours of administratively uncontrollable overtime (AUO) for all of these dates.[1] *Id.* at 102-103, 114-121, 142-158.

On May 23, 2016, Bergeron, the HSI Resident Agent in Charge in Houma, sent the appellant an email, informing him they needed his cubicle in the front of the office for a CBP officer who was going to be assigned to their office; Bergeron observed the appellant was seldom present, and said the appellant's desk was being moved to the back of the office where there was a processing area with a desk and a jail area. HR (Bergeron Testimony); IAF, Tab 45 at 69; Tab 50 at 114.

On July 14, 2016, Crespo asked Bergeron to confirm the appellant's hours working with BEST. IAF, Tab 45 at 69; HR (Bergeron Testimony). On July 15, 2016, Bergeron informed Crespo the appellant was not frequently in the office, and that he last saw him on May 21, 2016, and June 29, 2016. IAF, Tab 45 at 69; HR (Bergeron Testimony).

On August 5, 2016, Crespo reported the appellant to the agency's Joint Intake Center (JIC).[2] IAF, Tab 46 at 18. Crespo reported that, on July 13, 2016, he and Milian went to the Houma office and the appellant was not present. *Id.*

---

[1] The head of an agency may approve AUO pay for an employee who occupies a position that requires substantial amounts of irregular, unscheduled overtime work which cannot be controlled administratively. IAF, Tab 33 at 24; IAF, Tab 46 at 102-103.

[2] Employees are required to report certain misconduct allegations, including misconduct that could jeopardize the agency's core mission or misuse of government property, to the JIC. IAF, Tab 29 at 68-69.

Crespo reported the appellant's home to work reports had been late, and that he was not using his government vehicle.[3]  *Id.*  Crespo also reported the appellant's fuel consumption and miles driven were very low, and his productivity had decreased.  *Id.*  The agency's Office of Professional Responsibility (OPR) began conducting an investigation.  *Id.* at 4.

During his investigation interview with OPR, conducted October 26, 2016, the appellant acknowledged he did not often report to the Houma office, and instead would monitor the jails from his cell phone at home.  IAF, Tab 46 at 139, 142-44.  He acknowledged he was absent from the Houma office starting in February 2016 through multiple dates in September of 2016.  *Id.* at 139, 142-158.  He explained to OPR he was primarily working from home, checking on his jails using his government cell phone, and sometimes would work in coffee shops or go to the New Orleans office.  IAF, Tab 46 at 105, 142-158; Tab 47 at 4, 10-11.  He acknowledged lying to his supervisors, including Crespo, Milian, and Acuna about his whereabouts, because he did not want them to know he was not in the Houma office.  IAF, Tab 47 at 47-48, 52-54, 62-64, 66-68, 81-82.  He explained his dissatisfaction with his work situation, pointing to his GOV being a van instead of a sedan, the noisiness of his vehicle, having his desk at the back of the office instead of the front, and his general dissatisfaction with being a "transport person" rather than conducting surveillance and investigative work.  IAF, Tab 46 at 105-12, 121; Tab 47 at 10-11, 13-15, 69-74.

On January 26, 2017, the appellant sought Employment Opportunity Commission (EEO) counseling, alleging he had been subjected to discrimination and a hostile work environment based on his national origin (Egypt), religion (Muslim), and in retaliation for complaining about discrimination, beginning in January 2015.  IAF, Tab 28 at 36, 48-59.  In January 2017, the appellant began

---

[3] The home to work reports are reports reflecting the employee's mileage from home to office, and from the office to home, using the GOV.  IAF, Tab 30 at 63.

treatment with psychiatrist Peter Mahony for anxiety and depression. HR (Testimony of Mahony); IAF, Tab 50 at 223.

On March 23, 2017, the agency's OPR completed its investigation. IAF, Tab 46 at 4. On May 11, 2017, the appellant filed a formal EEO complaint. IAF, Tab 28 at 36.

On November 6, 2017, the agency proposed the appellant's removal due to charges of Absence Without Leave (AWOL), Lack of Candor, Falsification, Failure to Comply with Leave Procedures, and Improper Association. IAF, Tab 44 at 82-90. The proposal stated the appellant could submit a reply to David Rivera, Field Office Director, New Orleans. *Id.* at 86-87.

On March 7, 2018, the appellant submitted a written reply to Rivera. IAF, Tab 44 at 4-55. In his reply, he stated that he was subjected to discriminatory and offensive comments, and that he complained to Crespo about these comments on April 13, 2016, during a midyear evaluation. *Id.* at 5. He acknowledged he was absent from the Houma office for the dates in question, but stated he was working off-site. *Id.* at 8. He stated he was not truthful to Crespo about his whereabouts because of anxiety caused by workplace harassment, and he worked from home or other locations to avoid the harassment. *Id.* at 10. The appellant said his time and attendance records for the dates in question were accurate, and, although he was not working in Houma, he worked the hours listed (eight hours of regular time and two hours of overtime) in other locations. *Id.* at 13.

On March 7, 2018, the appellant presented an oral reply to Rivera. IAF, Tab 44 at 56-81. As of May 15, 2018, the agency and the appellant, who had been discussing settlement, reached an impasse. IAF, Tab 58 at 18. On May 16, 2018, the parties resumed settlement discussions. *Id.* at 19-20.

On or around June 2, 2018, the parties entered into a settlement agreement of the appellant's pending EEOC complaint. IAF, Tab 1 at 18. As a result of the settlement, the appellant agreed to resign from his position, effective December 8, 2018, and withdraw his EEOC complaint. *Id.* at 18; Tab 58 at 7, 21-22, 62;

Tab 59 at 46; Tab 63 at 65.  Pursuant to the agreement, the agency processed the appellant's resignation on December 8, 2018.  IAF, Tab 58 at 62.  On March 12, 2020, the appellant elected to void the settlement agreement after the EEOC's Office of Federal Operations found it was based on a mutual mistake.[4]  IAF, Tab 1 at 19.

On November 20, 2020, Diane L. Witte, Field Office Director, New Orleans, issued a letter to the appellant, removing him effective July 6, 2018, and providing him with appeal rights.  IAF, Tab 43 at 34-49.   The appellant's resignation SF-50, effective December 8, 2018, was replaced by one reflecting his removal, effective July 6, 2018.  IAF, Tab 58 at 62-65.   This action was effectuated on or around December 3, 2020.  IAF, Tab 58 at 21-22, 64, 72-73.

In her letter, Witte described that Rivera decided to remove the appellant on May 15, 2018.  IAF, Tab 43 at 34-39.  Witte relayed that the parties later reached a settlement agreement and described the compliance issues stemming from the agreement.  *Id.* at 34-35.  Witte concluded: "Having confirmed via telephone with FOD Rivera, now retired from the Agency, that he intended to remove you from your position for the charges of misconduct identified above, I hereby ratify his decision."  *Id.* at 35.  Witte did not discuss the charges in the proposed removal letter, the *Douglas* factors, or the reasons of either Rivera or Witte for removing the appellant.  *Id.* at 34-39.

Before issuing this letter, Witte spoke with Rivera, who had retired from the agency in February 2019, and Rivera informed Witte that he intended to remove the appellant based on the proposal issued on November 6, 2017, and that he would have removed the appellant if the parties had not reached a settlement

---

[4] On October 1, 2020, the appellant initiated a Board appeal, asserting his resignation from the agency was involuntary, and that the agency improperly failed to restore him to his position after he voided the EEO settlement agreement.  *See Ahmed Ahmed v. Department of Homeland Security*, MSPB Docket No. DA-0752-21-0003-I-1, Initial Appeal (Tab 1).

in May 2018.  IAF, Tab 43 at 35; Tab 35 at 430.  It is undisputed Witte did not read or review the appellant's written or oral replies, and she did not consider the *Douglas* factors in ratifying the decision to remove the appellant.  IAF, Tab 53 (joint stipulations 7 and 8).

On December 18, 2020, the appellant filed an appeal of the removal.  IAF, Tab 1.  The appellant asserted affirmative defenses of EEO retaliation, discrimination based on national origin (Egyptian/Arab) and religion (Muslim), whistleblowing retaliation, harmful procedural error, violation of due process, and violations of law.  IAF, Tabs 13, 17, 51, and 53.

<u>The agency violated the appellant's procedural due process rights.</u>

As explained below, I do not address the merits of the charges against the appellant here, because I find the agency violated the appellant's right to due process and he is therefore entitled to a procedurally correct new proceeding. Due process under the Constitution requires a tenured federal employee be provided "written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  The Court has described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."  *Id.* at 542 (emphasis as in original).  The Supreme Court expressly noted that a meaningful opportunity to present the employee's side of the case is important in enabling the agency to reach an accurate result for two reasons.  First, dismissals for cause will often involve factual disputes and consideration of the employee's response may help clarify such disputes.  *Id.* at 543.  In addition, even if the facts are clear, "the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect."  *Id.*  Thus, the employee's response is

essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate.  *See Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1374-76 (Fed. Cir. 1999); *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279 (Fed. Cir. 2011).

The U.S. Court of Appeals for the Federal Circuit continues to explain the due process rights of the tenured employee, finding the right to constitutional due process in areas other than the opportunity to respond.  In *Stone*, the court noted, in addition to the statutory procedures an agency must follow in removing a Federal employee entitled to rights, i.e., 5 U.S.C. § 7513(b), procedural due process requires one's property right cannot be deprived except pursuant to constitutionally adequate procedures.   The court noted the importance of procedural fairness throughout the pre-decisional stage:

> Our system is premised on the procedural fairness at each stage of the removal proceedings.   An employee is entitled to a certain amount of due process rights at each stage and, when these rights are undermined, the employee is entitled to relief regardless of the stage of the proceedings.

*Stone,* 179 F.3d at 1376.   The court in *Stone* reaffirmed its earlier holding in *Sullivan v. Department of the Navy*, 720 F.2d 1266, 1274 (Fed. Cir. 1983), that, when a procedural due process violation has occurred, such a violation is not subject to the harmless error test.  *Stone,* 179 F.3d at 1377.

In *Ward,* the court reaffirmed that, if ex parte communications rise to the level of a constitutional due process violation, the action would have to be reversed based on a denial of constitutional due process even if the communications concerned the penalty, and not the merits of the charges.   In *Ward,* the court noted, "*Stone*, referencing Supreme Court precedent, emphasized the importance of giving an employee notice of any aggravating factors supporting an enhanced penalty as well as a meaningful opportunity to address 'whether the level of penalty to be imposed is appropriate.'"  *Ward*, 634 F.3d at 1280 (citing *Stone*, 179 F.3d at 1376).

Here, the deciding official did not consider the facts, charges, or the appellant's replies before issuing her removal decision. At hearing, Witte testified she issued the decision letter to the appellant, and her decision was a "ratification" of the previous decision made by FOD Rivera. HR (Testimony of Witte). She stated she had the authority "to issue the decision letter" as the current FOD for New Orleans, and Rivera had already decided to remove the appellant. *Id.* She attested that it seemed more efficient to ratify Rivera's decision than to do it herself, and she relied on advice from agency counsel in this process. *Id.* She attested that, in November 2020, she spoke to Rivera on the phone for around fifteen minutes, and, during that conference, Rivera stated he had decided to remove the appellant. *Id.* He also told her the appellant "should have gone to jail." *Id.* Witte stated they did not discuss the charges or the *Douglas* factors. *Id.* She attested she knew Rivera was respected as a FOD, and that she ratified Rivera's decision based on his reputation as a FOD, trusting that he followed the process to arrive at a removal decision. *Id.* After this conference, she sent an email to agency counsel, summarizing the call and stating that Rivera had made the removal decision before the parties entered into the settlement agreement in 2018. *Id.* Witte clarified that Rivera made the decision to remove the appellant in 2018, and that she made the decision regarding the appellant's retroactive removal in November 2020. *Id.* She stated she considered herself to be the "Ratifying Official," and not the "Deciding Official." *Id.* She acknowledged she did not know what charges Rivera sustained in 2018; she stated that it did not matter what charges were sustained, as Rivera confirmed he made the decision, and she was ratifying his prior decision. *Id.*

Similarly, at hearing, Rivera described the telephone call with Witte, explaining that Witte informed him that the parties' settlement agreement was cancelled, and that she asked him what his decision would have been. HR (Testimony of Rivera). Rivera responded he was going to remove the appellant because the lack of candor and falsification charges were egregious. *Id.* He

acknowledged he told Witte the appellant "should have gone to jail," but stated the appellant was never prosecuted, and he did not consider this with regards to the appellant's removal. *Id.* There is no dispute that Rivera did not sign a decision letter or ever provide a signed decision letter to the appellant. Also, the agency did not finalize the *Douglas* factors form, although Rivera indicated he may have started drafting the *Douglas* factors worksheet. HR (Testimony of Rivera); IAF, Tab 35 at 427; *see also* IAF, Tab 51 at 83 (Rivera stating "when the case was before me, we ended up going with a settlement, so we never ended up drafting the Douglas factors nor – nor the final decision.").

In this case, contrary to Witte's characterization of herself as a "Ratifying Official," and not a "Deciding Official," I find the deciding official was Witte, and not Rivera. Rivera retired from the agency in February 2019. IAF, Tab 35 at 426. In November 2020, Rivera was no longer employed by the agency, and thus had no authority to issue a removal decision. In *Hamilton v. U.S. Postal Service*, 58 M.S.P.R. 486, 488 (1993), the Board found the agency's demotion action was "not in accordance with law" where the deciding official signed the demotion decision letter four days after she had retired. The Board noted that, at the time the deciding official issued the final decision demoting the appellant, she was no longer an agency employee and had no legal authority to demote the employee. *Id.* The Board stated that, under 5 U.S.C. § 7513, it is the "agency" that is authorized to take an adverse action against an employee. *Id.* Further, under 5 C.F.R. § 752.404(c)(2), "[t]he agency shall designate an official to hear the employee's oral answer who has the authority either to make or recommend a final decision on the proposed adverse action." *Id.* The Board stated, "[t]here is nothing in the applicable statute or regulations that authorizes the agency to designate an individual other than an agency official to make or recommend a final decision on a proposed adverse action or that confers such decision-making authority to taking an adverse action against upon such an individual." *Id.* at 489. The Board further noted there was no indication "the agency duly designated

another agency official to ratify her ultra vires decision." *Id.* Thus, I find that, in 2020, Rivera lacked decisional authority and was not the deciding official as to the appellant's removal.

Because Witte was the deciding official as to the appellant's removal, I find the agency committed a due process violation by having Witte "ratify" Rivera's prior decision without considering the facts underlying the proposed action. Witte did not consider the appellant's replies or the *Douglas* factors, and she was unfamiliar with the charges set forth in the proposal or which charges Rivera sustained. Rather, she testified she ratified or approved of the removal decision based on Rivera's professional reputation and his prior position. This is contrary to the well-established requirement that the deciding official "hear the employee's explanation, assess its credibility, and determine whether the charges should be sustained." *Anderson v. Department of Transportation*, 15 M.S.P.R. 157, 166 (1983). The deciding official must "exercise independent judgment regarding the sustaining of the charges in each case," and the appellant must have a "meaningful opportunity to reply to the charges." *Anderson*, 15 M.S.P.R. at 168. This case is not unlike those where a deciding official renders a decision without considering the appellant's reply. *See Alford v. Department of Defense,* 118 M.S.P.R. 556, ¶ 6 (2012) ("An employee cannot be said to have had a meaningful opportunity to present his side of the story and invoke the discretion of the deciding official if the deciding official did not hear the appellant's oral reply to the proposal notice before issuing his decision.); *Massey v. Department of the Army,* 120 M.S.P.R. 226, ¶ 10 (2013) (reversing a removal for lack of due process where removal decision was issued without having scheduled the reply). Here, the deciding official failed to consider the charges and the appellant's replies, and thus the agency violated his right to due process.

I have considered Witte's argument that she believed the decision-making process was similar to changing the selecting official for a vacant position. HR. Similarly, in its briefing, the agency argues Witte was permitted to "ratify by

affirmance" Rivera's prior decision retroactive to the last day appellant worked for the agency, and that her ratification was akin to signing a selection register for an unavailable selecting official.  IAF, Tab 68 at 7-8. A federal agency's selection process is an administrative process where employees do not have a constitutional right to due process.  Applicants for a federal position do not have a "constitutionally protected property interest" in a prospective position. *Loudermill*, 470 U.S. 532, 543.  The authority to make a decision on a proposed adverse action is not a "ministerial act" or an administrative responsibility that can be transferred to another supervisor without a full consideration of the proposed action.  For this reason, I find these arguments and the agency's citation to *Vandewall v. Department of Transportation,* 52 M.S.P.R. 150, 155 (1991), a case involving the termination of a probationary employee, to be unpersuasive.[5] IAF, Tab 68 at 7-8.

Due process is "flexible and calls for such procedural protections as the particular situations demands."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In *Gajdos v. Department of the Army,* 121 M.S.P.R. 361, ¶ 18 (2014), the Board advised consideration of the three *Mathews* factors to determine whether administrative procedures are constitutionally sufficient: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the private interest through the procedures used; and (3) the government's interest,

---

[5] As described by the U.S. Court of Appeals for the Federal Circuit, the appellant's supervisor, in *Vandewall*, Wiegand, recorded his findings in a memo to Robinson, who had authority to remove the appellant, and recommended the appellant's probationary termination to Robinson.  *Vandewall v. Department of Transportation*, 5 F.3d 1504 (Table), 1993 WL 302646, at *1 (Fed. Cir. August 9, 1993).  Robinson drafted and approved a termination letter, which was signed by Wiegand's supervisor, Goldstein. Wiegand signed the termination letter and gave it to the appellant, and Robinson signed the SF-50 after the appellant's probationary period ended.  *Id.*  The Court noted that Robinson, who had the authority to remove the appellant, drafted and approved of the termination letter.  *Id.* at *2.  Further, the Court noted that Goldstein could perform the "ministerial act" of signing the termination letter, which Robinson had drafted and approved.  *Id.*

including the function involved and the fiscal and administrative burdens the additional or substitute procedural requirement would entail.  *Id.* (internal citation omitted).

Under the first *Mathews* factor, i.e., the private interest affected by the action, one must take into account the "length and finality of that deprivation." *Id.*, ¶ 19.  This factor weighs against the agency, as the appellant's removal decision ended his agency employment.  The second *Mathews* factor, the risk of an erroneous deprivation and the probable value of additional procedural safeguards, also weighs against the agency.  *Id.*, ¶ 20.  Here, the underlying action involved five charges, extensive records, and complex facts.  I find there was a high risk of "erroneous" deprivation of the appellant's property interest through the procedures used by the agency.  Rivera was unclear (understandably) on exactly which charges he decided to sustain and when.[6]  Further, there was no decision letter issued in 2018 that documented or memorialized his thought process.[7]  HR (Testimony of Rivera).  Considering the third *Mathews* factor, the government's interest, I find this too weighs against the agency.  While the agency had a strong interest in taking disciplinary action against the appellant, it

---

[6] The decision letter did not specify which charges were being sustained.  IAF, Tab 43 at 34-49.  At hearing, Rivera testified that, in 2018, he decided not to sustain two of the charges (Failure to Follow Leave Procedures (Charge 4) and Improper Association (Charge 5)).  HR.  This decision to only sustain three out of the five charges was first set forth in a declaration that Rivera prepared on May 24, 2021.  IAF, Tab 35 at 427-428.  This is inconsistent with a March 15, 2018 email to counsel, in which Rivera indicated he was inclined to sustain all of the five charges.  IAF, Tab 58 at 18.  At hearing, Rivera explained that he subsequently decided (in 2018) to not sustain two of the charges.  HR.  Accordingly, the appellant was not aware of what charges were sustained until Rivera's declaration dated May 24, 2021. IAF, Tab 35 at 427.

[7] The written decision letter, which is contemporaneous to the actual decision and memorializes the deciding official's thought process, is critical.  Under 5 U.S.C. § 7513(b)(4), the agency must issue a "written decisions and the specific reasons."  Under 5 C.F.R. § 752.404(g)(2), the decision notice "must specify in writing the reasons for the decision...."  *See also Franks v. Department of the Air Force*, 22 M.S.P.R. 502, 505 (1984) (agency is presumed to have considered replies referred to in the decision letter).

could have provided him a process that afforded him constitutional due process by having Witte consider the appellant's replies, the *Douglas* factors, and even Rivera's recommendation, and then issuing a decision letter as the deciding official, instead of as a "ratifying official" who essentially rubber-stamped Rivera's prior decision.[8]  Balancing the *Mathews* factors, I find the agency failed to satisfy the requirements of due process in this case.

Although the agency is entitled to subsequently initiate "new, constitutionally correct" proceedings against the appellant based on these same facts, *see Stone*, 179 F.3d at 1377, I find the agency's action must be reversed.

The appellant asserted affirmative defenses.

The appellant alleges the agency's removal action resulted from harmful procedural error, discrimination based on race, national origin, religion, and retaliation based on prior EEO activity, and retaliation based on whistleblowing. IAF, Tab 53.  Because the appellant may be entitled to additional relief if he proves his allegations that the agency's action constituted prohibited discrimination and reprisal, these affirmative defenses are not rendered moot by the determination that the agency's action must be reversed on due process grounds. *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶¶ 13, 14 (2012); *Cowart v. U.S. Postal Service*, 117 M.S.P.R. 572, ¶ 8 (2012).

The appellant's harmful procedural error claim, however, is moot.  This affirmative defense is distinguishable from his Title VII discrimination and

---

[8] Under 5 C.F.R. § 752.404(c)(2), a person receiving a reply to a proposed adverse action must have authority either to decide the case or to make a recommendation on the decision.  In *Cox-Vaughn v. U.S. Postal Service*, 100 M.S.P.R. 246, ¶ 14 (2005), the Board held that an agency is not required as a matter of procedural due process to provide an employee with the opportunity to make a response to a personnel action directly to the deciding official.  Rather, providing an employee with the opportunity to direct their reply to an official who recommends a decision to the deciding official was sufficient.  As discussed herein, however, Witte wholly failed to consider the appellant's reply.

retaliation claims because it does not entitle him to any relief beyond reversal of the action.  *See Fernandez v. Department of Justice*, 105 M.S.P.R. 443, ¶ 5 (2007) (a matter is moot where the employee received all of the relief that he could have received "if the matter had been adjudicated and he had prevailed"); *Compton v. Department of Energy*, 3 M.S.P.R. 452, 454 (1980).

The appellant bears the burden of proving his affirmative defenses by preponderant evidence.[9]  *See* 5 C.F.R. § 1201.56(b)(2)(i)(C).

<u>The appellant did not prove his affirmative defenses.</u>

Federal employees are protected against discrimination based on, inter alia, race, national origin, religion, and retaliation for the exercise of Title VII rights, by 42 U.S.C. § 2000e-16.  *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 36, 37 (2015).  The appellant may meet his burden to establish a violation of 42 U.S.C. § 2000e-16 in several ways.  When an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether he has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action, even if it was not the only reason.  *Savage*, 122 M.S.P.R. 612, ¶¶ 41, 51.  Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1).  In determining whether the appellant has met his initial burden to show a motivating factor, the Board must consider all of the evidence together as a whole.  *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 29 (2016).  If he has made such a showing, the Board will find the agency committed

---

[9] I find these claims are not resolved by the parties' Offer of Resolution in the appellant's EEOC case because this appeal involves different claims.  IAF, Tabs 72, 77, 78, 79.  On July 16, 2021, the agency filed a Motion to Strike the Appellant's Reply.  IAF, Tab 80.  The appellant has also filed a Cross Motion to Strike and a Motion for Sanctions.  IAF, Tabs 81, 83.  The parties' motions are DENIED.  However, none of these pleadings change the outcome of this Initial Decision.  Further, I DENY the request for any further briefing or responses on this issue.  IAF, Tab 83.

a prohibited personnel practice in violation of 5 U.S.C. § 2302(b)(1).  If he has not made such a showing, the inquiry will end at that point.

If the appellant makes the required showing, the next issue is whether he is entitled to corrective action.  A violation of 42 U.S.C. § 2000e-16 will entitle the appellant to reversal of the personnel action only if the prohibited personnel practice was its "but for" cause, meaning the agency would not have taken the same action in the absence of the discriminatory or retaliatory motive.  *Savage*, 122 M.S.P.R. 612, ¶¶ 48, 49.  The burden of proof shifts to the agency to show, also by preponderant evidence, that it would have taken the action even if it lacked such a motive.  *Gerlach v. Federal Trade Commission*, 9 M.S.P.R. 268, 273-75 (1981).  "If we find that the agency has made that showing, its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action."  *Savage*, 122 M.S.P.R. 612, ¶ 51.

In addition, in the context of a claim of hostile work environment, Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 67 (1986)).  Title VII does not impose a general workplace civility code and does not prohibit all workplace harassment, but only that which involves statutorily proscribed forms of discrimination.  *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

The appellant presented no direct evidence the agency's removal decision was based on his race, national origin, religion, or EEO activity.[10]  The appellant

---

[10] Direct evidence of discrimination may be any statement made by an employer that: (1) reflects directly the alleged discriminatory attitude and (2) bears directly on the contested employment discrimination.  *Arredondo v. U.S. Postal Service*, 85 M.S.P.R. 113, ¶ 13 (2000).  It is evidence, that, if believed, proves the existence of a fact in issue

also did not submit evidence that any similarly-situated employee outside of his protected groups was treated more favorably, or not removed for similar misconduct. Instead, the appellant alleged the agency failed to address a hostile work environment based on his race, national origin, and religion, and that he was absent from the Houma office in an effort to avoid the harassment. To prevail on such a claim, the appellant must show the complained-of conduct was severe or pervasive enough to create a working environment that a reasonable person would find hostile or abusive, and that he subjectively perceived the working environment to be hostile or abusive. *See Bates v. Department of Justice*, 70 M.S.P.R. 659, 662-63 (1996) (discussing burden of proof for an allegation of hostile environment based on sex). Also, in the context of this Board appeal, the appellant must establish a causal connection between the alleged harassment and his removal. *See Pope v. Department of the Navy*, 44 M.S.P.R. 289, 294 (1990).

The appellant's removal action was largely based on three charges: Charge One (AWOL) related to his absences from the office on eight separate dates in July 2016, August 2016, September 2016, and October 2016. IAF, Tab 44 at 82-84; HR (Testimony of Rivera). The appellant acknowledged being absent from the Houma office on these dates. HR (Testimony of Appellant); IAF, Tab 53 (joint stipulation 2). Charge Two (Lack of Candor) relates to the appellant's statements to Crespo that he was in the gym, or working in Houma, when he was not. IAF, Tab 44 at 83-84. The appellant stipulated that he made the statements as set forth in the first seven specifications for this charge. HR (Testimony of Appellant); IAF, Tab 53 (joint stipulation 3). Charge Three (Falsification) relates to the appellant's Time and Attendance Records, encompassing the dates set forth

without inference or presumption; however, such evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). If an alleged discriminatory statement at best merely suggests a discriminatory motive, then it is only circumstantial evidence. *Id.*

in Charge One.  IAF, Tab 44 at 84.  The appellant stipulated he certified and affirmed the accuracy of these records, and the OPR records regarding his time and attendance are accurate.  IAF, Tab 53 (joint stipulations 4, 5, 6, and 9).

The appellant asserted his misconduct was the result of a hostile work environment in the Houma office.  HR (Testimony of Appellant).  He testified his co-workers made comments disparaging his religion and national origin.  *Id.* There are essentially three contexts in which the alleged harassment occurred. First, it is undisputed special agents in the Houma office sang a song entitled, "Egyptian Lover" or called the appellant an "Egyptian Lover," referred to him as "Akhmed," and told the appellant, "Silence, I kill you," in reference to a puppet called "Akhmed the Dead Terrorist" used by a comedian named Jeff Dunham. HR (Testimony of Appellant, Todd Schexnayder, Charlotte Green, Lance Tingler, Michael Brunet).  Second, Deportation Officers and other ERO employees in the New Orleans office called the appellant "Akhmed," joked about him needing to wear a mask, and joked about his family.  HR (Testimony of Brian Huesman, Milian, and Nick Girod), IAF, Tab 35 at 415, 418. The record reflects other employees heard the appellant's first-line supervisor, Crespo, make discriminatory comments or call him "Akhmed."  HR (Testimony of Girod, Kris Hardin).  Finally, the appellant was subject to offensive comments at the firearms range, where the officers would conduct their firearms qualification on a quarterly basis each year.  At the firearms range, Firearms Instructor Rob Dinen asked the appellant if he brought his suicide vest or rocket-propelled grenade (RPG); someone called him a terrorist; and others referred to him as "Akhmed." HR (Testimony of Girod, Hardin, Zelroy Simms, and Mayo Bonnet).  Depending on scheduling, supervisors likely were present and heard these comments.  *Id.* The record does not establish exactly when the comments were made, although the appellant testified the comments were a regular occurrence at the firearms range and the Houma special agents made such comments every time they saw him.  HR (Testimony of Appellant).

The appellant testified he tried to pretend the comments were funny, and he was very afraid to confront his co-workers and ask them to stop.  HR (Testimony of Appellant).  He testified that, in April 2016, he went to Crespo and told him he "had enough" and how he felt, but the comments did not stop.  *Id.*  The appellant further related that Crespo began treating him differently after, in March or May 2016, the appellant requested an alternate vehicle.  *Id.*  The appellant attested that, after he complained to Crespo about his vehicle, Crespo began retaliating against him, including removing his home to work driving privileges.  *Id.*  The appellant also asserted that, after his complaint about his vehicle, the HSI employees in Houma moved him from a front office to a back cubicle in the processing area.  *Id.*  He alleges that Crespo "wanted to punish [him] and get [him] in trouble," and that Crespo reported him to OPR to retaliate against him. *Id.*

 The appellant explained he was absent from the Houma office because of the discriminatory work environment.  HR (Testimony of Appellant).  He testified he "could not confront Crespo anymore" and it was "one of the lowest points of [his] life."  *Id.*  He said he "hid from the world" because he did not know how to confront Crespo and because Crespo had previously "punished" him when the appellant complained about his vehicle.  *Id.*  He stated he "lied to [Crespo] to get him to stop harassing [him]."  *Id.*  The appellant asserted he was avoiding the Houma office "to avoid being exposed to harassment and discrimination."  IAF, Tab 44 at 10.  He explained that he did not tell OPR about the discrimination because he was "scared" and feared retaliation, and that after receiving mental health treatment, he was able to come forward.  HR (Testimony of Appellant).

After considering these and the other incidents described in the record, I find they do not demonstrate a pattern of harassment resulting in a material alteration in the terms and conditions of the appellant's employment.  Whether an environment is hostile can be determined only by looking at all the circumstances, including the frequency of the conduct, its severity, whether it is

physically threatening or humiliating, or a "mere offensive utterance," and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.  The Board has held isolated, disparate incidents, unless very serious, do not amount to an impermissible change in employment.  *See Salazar v. Department of Energy*, 88 M.S.P.R. 161, ¶ 14 (2001).  Here, there is no evidence the appellant was continuously exposed to the comments, given the independent nature of his job duties.     Further, although the appellant indicated the conduct at the range was "regular," the record reflects the appellant attended his firearms qualification only four times per year.  He did not provide details as to how often he was in the office at the same time as the Houma special agents and thus subjected to their conduct.  Rather, the record reflects that Houma special agents were often absent from the office due to their investigatory duties and the independent nature of their law enforcement positions; the appellant also worked independently in his CAP duties of driving to various jails, to Houma, and then to the New Orleans office for processing at the end of the day.  HR (Testimony of Appellant, Roderick Baudy, Hardin[11]).  Most of the Deportation Officers worked independently, and, as long as they monitored their jails, their supervisors were not tracking their specific whereabouts.  HR (Testimony of Appellant).

Accordingly, I cannot conclude the incidents were sufficiently continuous, and not merely episodic, to be considered pervasive.  Based on the record in its entirety, I find the appellant has not shown he was subjected to a work environment permeated with ridicule such that a reasonable person would believe it created an impermissible alteration in the terms and conditions of his

---

[11] Hardin attested that he typically started his workday by checking on his jails from home. HR (Testimony of Hardin).  Then he would usually go to a jail and then to the office for processing.  *Id.*  He described his daily routine of "home, jail, office, and then another jail for another pickup."  *Id.*  This is consistent with the testimony of other ERO employees.

employment.  *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" (internal citations omitted)); *Wright v. Department of Veterans Affairs*, 85 M.S.P.R. 358, ¶ 23 (2000) (explaining that alleged acts of harassment must be evaluated from the objective viewpoint of a reasonable person in the appellant's position).

Importantly, the operative question is whether the alleged hostile work environment caused the appellant's misconduct in question, specifically, his absences from the Houma office (in July, August, September, and October 2016), his statements to his supervisor (which he acknowledged were false), and his certification of inaccurate time and attendance records.  I note the appellant was largely absent from the Houma office starting in February 2016.  During this time, he contends he was working from home or in coffee shops, occasionally exercising, and sometimes present in the ERO New Orleans office.  Given his prolonged absence from the Houma office, and the nature of his job duties, I find it improbable that the environment in that office caused his absences starting in July 2016.  Insofar as the appellant attempted to subsequently justify his absences by pointing to the reduced workload under President Obama,[12] or his ability to conduct his core duties "from any location," this further undercuts his claim that an agency-created hostile work environment caused his misconduct.[13]  The record

---

[12] The appellant testified that, from 2014 to 2016, President Obama restricted arrests to those who had criminal convictions, which led to a decrease in the deportation workload.  HR (Testimony of Appellant).  He stated that he asked his supervisor for more work but was denied, and explained that "not having enough work" was a factor leading him to be absent from the office.  *Id.; see also* IAF, Tab 47 at 73-74.

[13] The appellant told OPR, "There's absolutely no purpose for me to go and sit at a desk anywhere."  IAF, Tab 47 at 11.  He acknowledged not everyone works from home, but stated that he accomplished the same amount of work as other employees, stating, "it's absolutely no different than the other employees who are watching, you know a TV show on their phone or – or listening to music or standing around talking, spending

reflects the appellant was dissatisfied with his work duties, wanted to be a special agent, and was planning to take another position with the agency.  HR (Testimony of Appellant, Green).  Under these circumstances, the appellant failed to establish the extent of his exposure to the comments, or that he was subject to a hostile work environment during the time period of the AWOL charges.  Insofar as Deportation Officers or other employees in the New Orleans office made inappropriate comments, or that employees, such as Firearms Instructor Dinen and other individuals, made inappropriate comments at the firearms range, these claims fail to establish the appellant suffered from a hostile work environment in Houma that led him to be absent from the Houma office for the dates in question.  Accordingly, I find the appellant has failed to establish that his absences were caused by a hostile work environment in the Houma office.

The appellant also explained that he was absent from work due to other unsatisfactory workplace conditions, including a lack of work and a noisy vehicle, conditions which he also considered to be discriminatory and part of a hostile work environment.  He was unsatisfied with his vehicle and office space, and wanted work that was more investigatory in nature.[14]  The record reflects the agency denied his requests to transfer to New Orleans, and that funding was not properly allocated for his position in Houma.  HR (Testimony of Acuna, Milian, Appellant).   Even considering these claims, and the appellant's general contention that his supervisors were not responsive to his complaints about his

---

their whole day doing absolutely nothing."  *Id.* at 89.  Employees who show up at the office are "just wasting government electricity."  *Id.* at 90.

[14] The appellant told Acuna that he lied to Crespo because he did not have sufficient support from the Houma office and could never take a break.  IAF, Tab 35 at 151; HR (Testimony of Acuna).  He also wanted an enforcement vehicle rather than a passenger van so he could do more "enforcement work."  IAF, Tab 29 at 51.  The appellant told OPR that he did not have enough work, he wanted an "enforcement vehicle" rather than a transport van, and he wanted to do "more field arrests as opposed to doing – the jail stuff."  IAF, Tab 46 at 106-110, 121.

work conditions, he has failed to establish he was subjected to a hostile work environment that led to his absences from the office, false statements to his supervisor, and inaccurate time and attendance records. The appellant has failed to demonstrate how these various workplace deficiencies, alone or in combination, caused him to absent himself from the workplace and commit the other conduct in question. Thus, even if the appellant had established a hostile work environment claim, he has failed to establish a causal connection between the alleged harassment and his removal.[15] *See Pope*, 44 M.S.P.R. at 294.

In particular, I find that even if the appellant was justifiably absent from the Houma office due to a hostile work environment, he has not demonstrated that any agency discrimination or harassment caused him to falsify his time cards. The appellant testified he worked eight hours of regular time, plus two hours of overtime, for the time periods at issue in the removal action. HR (Testimony of Appellant). The appellant was not credible in this regard, and his assertions that he worked ten hours a day were not convincing. He explained that he was checking on jails from coffee shops or his home, and that sometime he would exercise, have lunch at his parents' house, or go to the New Orleans office. HR (Testimony of Appellant); IAF, Tab 46 at 105, 143-49, 155-56; Tab 47 at 4, 10-11. At hearing, he attempted to justify his conduct, offering that the agency was "very liberal" with its time and attendance policies, people took long lunches, and no one was tracked as long as they monitored their jails. HR. He also explained this conduct occurred during the period of reduced deportation workload. *Id.* I find his explanations to be inherently improbable. *See Hillen v. Department of*

---

[15] Insofar as the "intolerable working conditions" standard applies to the appellant's claims of a hostile work environment, I find he has failed to demonstrate that his working conditions were made so difficult by the agency that a reasonable person in his position would have felt compelled to be absent from the workplace during the dates in question. *See Savage*, 122 M.S.P.R. 612, ¶ 20 (citing *Peoples v. Department of the Navy,* 83 M.S.P.R. 216, ¶ 5 (1999)).

*the Army*, 35 M.S.P.R. 453, 458 (1987) (credibility factors include the inherent improbability of the witness's version of events, and the contradiction of the witness's version of events by other evidence).   It is improbable the appellant spent ten hours a day checking on two or three jails from coffee shops or his home given his undisputed absence from the Houma office.   Moreover, the appellant's testimony is inconsistent with his other testimony that he could check on jails in "ten minutes," and had insufficient work to do.   The appellant's work duties involved transporting individuals and processing them for deportation.   He also had collateral duties supporting the Houma special agents, and these duties would have required some activity outside of his home, coffee shops, the gym, or the New Orleans office.[16]   I have evaluated the likelihood of the events occurring in the manner described by the appellant, and find it highly improbable the appellant worked ten hours a day given that he was absent from the Houma office and present only briefly at the New Orleans office.[17]   *Hillen*, 35 M.S.P.R. at 461.

I recognize the appellant's work environment was difficult, and that he faced unpleasant work conditions.   I do not condone the unprofessional and insulting remarks made by the appellant's co-workers and tolerated by his supervisors.   However, this does not justify the appellant's actions in absenting himself from the workplace, providing misleading information to various

---

[16] While Deportation Officers can work from home for brief periods to check initial emails and determine their first destination for the day, they must leave their homes to go to jails and agency processing centers.   HR (Testimony of Acuna, Huesman, Milian, Hardin, Zelroy Simms, Randy Morrow, and Rivera).   They are responsible for screening and interviewing people in jails to determine who is foreign born and possibly removable, and then transporting those individuals from the jails to an agency facility for further processing and potential deportation.   HR (Testimony of Acuna, Rivera).   They are not permitted to telework on a full-time basis.   *Id.*

[17] The appellant asserts that improper declarations of overtime were "widespread" at the agency, and claims he was singled out.   IAF, Tab 78 at 11.   However, the issues of whether the charges should be sustained, or whether the removal penalty should have been mitigated, are not before me in this appeal.

supervisors about his whereabouts, and claiming time and overtime that he did not work.[18]  Even if the agency's alleged creation of a hostile work environment, and the alleged failure of the agency to properly address any complaints, could justify the appellant's AWOL, it does not explain why he did not provide accurate information when asked about his whereabouts or provided inaccurate time and attendance records.

With regard to a potential disparate treatment claim, the agency provided sworn statements, hearing testimony, and other evidence that supports the agency's position regarding the charges.  Importantly, the evidence reflects the agency had a reasonable basis for discrediting the appellant's contention that he was working from home during the time periods in question.  At hearing, Rivera testified the appellant was assigned to Houma as the only ERO employee in that office, and was responsible for assisting the HSI component of the agency by conducting detention and transport responsibilities.  HR (Testimony of Rivera). He testified that, in 2018, he reviewed the appellant's replies to the proposed action, and decided to sustain the charges of AWOL, lack of candor, and falsification.  *Id.*  He noted that falsification was an extremely serious charge given that officers testify in court, and that the falsification and lack of candor charges led Rivera to lose faith in the appellant's ability to work for the agency.[19] *Id.*  He explained the appellant was assigned to Houma to conduct CAP functions such as detention and transportation for that office, and he could not perform that

---

[18] While the agency's proposal included only statements made to Crespo, the appellant also made misleading statements regarding his whereabouts to supervisors Milian and Acuna, who were not alleged to be mistreating him.  IAF, Tab 47 at 66-68, 81.  He also acknowledges that he lied to supervisors, who asked him how he was getting to work, when he told them that special agent Green was picking him up from home, when she was not.  IAF, Tab 47 at 77-79.

[19] Under the agency's Table of Penalties, a first offense of falsification can result in a removal penalty, and a first offense of lack of candor can result in a penalty ranging from a written reprimand to removal.  IAF, Tab 40 at 277.

work from home.  *Id.*  He noted that falsification of time and attendance records was a very serious charge, and that he concluded the appellant had basically lied on his timesheets by repeatedly claiming 8 hours of regular work and 2 hours of overtime while working from home.  *Id.*  Rivera attested there was no one who had comparable discipline to the appellant.  *Id.*

Rivera attested he was aware the appellant alleged the work environment was hostile and that Crespo discriminated against him.  *Id.*  He also considered the medical evidence the appellant submitted supporting that his workplace environment impacted his mental health.  *Id.*  Rivera attested that, upon learning of these allegations, he contacted the EEO office to ensure they had the appellant's complaint and that he also requested EEO training for that office.  *Id.*  Rivera explained why he did not consider it necessary to wait for the conclusion of the EEO investigation: if there was a finding of discrimination, it would not have outweighed the aggravating factors, and would have not excused the appellant's lack of candor and falsification.  *Id.*  He attested, "if discrimination had been sustained, this would not change the fact that he lied on official records."[20]  *Id.*  I observed Rivera testify and found him to be credible on these points.  *See Hillen*, 35 M.S.P.R. at 458.  Further, there was no indication in Witte's testimony, or elsewhere in the record, that she knew the appellant, worked with the appellant, was aware of his national origin, religion, or EEO activity, or had any unlawful animus towards him.[21]  HR (Testimony of Witte).

In support of his EEO retaliation claim, the appellant offers that, in April 2016, he complained about the discriminatory comments to Crespo, and Crespo

---

[20] Rivera's comment to Witte that the appellant "should have gone to jail," while severe and unwarranted, does not evidence discriminatory or retaliatory animus.  HR (Testimony of Rivera, Witte).

[21] Witte became the Field Office Director of New Orleans in June 2020.  HR (Testimony of Witte).

did not take action to address the situation.  IAF, Tab 17 at 7-8.  I did not find this assertion credible and find the appellant did not show he engaged in protected EEO activity in April 2016, as he asserts.[22]  Rather, the record supports the appellant complained in April 2016 only of general work-related dissatisfaction.  At hearing, the appellant said he went to Crespo in April 2016 and "told him [he] had enough" and "how [he] felt."  HR (Testimony of Appellant).  However, he did not testify he informed Crespo of his colleagues' offensive statements or made allegations of discrimination.  Further, his prior characterizations of his April 2016 meeting with Crespo suggest he did not.  Specifically, in his October 2016 interview with OPR, he characterized his complaint to Crespo as being about his inferior office space.  He stated he had previously told Crespo he had a "problem over there [in Houma]."  IAF, Tab 47 at 69.  He told OPR "the problem" was that he did not have a cubicle and had to sit in an isolated work area at the back of the office that was like a "jail."  *Id.* at 69-71.  This is consistent with Crespo's EEO affidavit, in which he stated the appellant told him that he wanted a transfer to the New Orleans office because he did not have much interaction with people in Houma, and the New Orleans office was close to his residence.  IAF, Tab 30 at 10.  Moreover, in the appellant's hearing testimony, he emphasized that his office space was moved, and his vehicle privileges were reduced, after he complained about his *vehicle* to Crespo in the May 23, 2016, text message.  HR (Testimony of Appellant).  He also explained that he feared retaliation because, after he complained to Crespo about

---

[22] In 2014, the appellant had made a prior complaint, using the terms "hostile work environment," in describing his supervisor's treatment of him.  IAF, Tab 35 at 405-6.  In a detailed and lengthy email complaint, he described that Supervisory Immigration Enforcement Agent (SIEA) Michael Mitchell told the Houma jails to contact him (Mitchell) and not the appellant, and that Mitchell delayed in reviewing his files and did not properly support him.  IAF, Tab 35 at 405-7.  In 2014, the appellant reported these concerns to OPR.  *Id.* at 407.  Green attested the appellant had drafted the email complaint and asked her to review it.  HR (Testimony of Green).  The appellant made no allegation that prior complaint was related to the action at issue in this appeal.

his vehicle, his driving privileges were taken away, and he was moved from his cubicle in the front of the office to the back. *Id.* The appellant related that he "felt it was retaliation for the noise complaint." *Id.* In his hearing testimony, he attributed the retaliation to his noise complaint, and not a prior complaint of discrimination. *Id.*

However, even accepting as true that the appellant complained to Crespo of discrimination in April 2016, he has failed to demonstrate that Crespo retaliated against him by referring him for investigation in August 2016. Crespo had a reasonable basis to report his subordinate employee in August 2016 to OPR given the appellant's diminished productivity and extended absences from the Houma office. IAF, Tab 46 at 18.

The appellant showed by preponderant evidence he engaged in protected EEO activity by seeking EEO counseling on January 26, 2017; filing a formal EEO complaint on May 11, 2017; and complaining about the discrimination in emails to Crespo and others in May 2017. IAF, Tab 28 at 36, 48-59; IAF, Tab 35 at 438. However, he failed to establish his protected activity was a motivating factor in the agency's action. I find no evidence of ambiguous behavior toward or comments directed at the appellant because of his EEO-related activity, or toward other employees who engaged in protected EEO activity.

Further, the record does not show the agency treated employees outside of his protected groups more favorably. *See Ly v. Department of the Treasury*, 118 M.S.P.R. 481, ¶ 15 (2012). The agency performed surveillance on another employee, Hardin, regarding his whereabouts. HR (Testimony of Appellant). Acuna or Scott Warren referred Hardin for investigation based on potential misuse of AUO and hiding from his supervisor; Crespo and other supervisors placed Hardin on a Performance Improvement Plan, and suspended him for ten days and then fourteen days for tardiness, failure to follow instructions, and/or

sleeping on duty.  HR (Testimony of Acuna, Hardin); IAF, Tab 36 at 18-20 (Memo entitled, "Request for Transfer of DO Kristopher Hardin").[23]

Looking at the evidence as a whole, as I am required to do, the appellant has failed to demonstrate the agency's stated reason for its action is unworthy of belief and a mere pretext for discrimination or retaliation.  *See Savage*, 122 M.S.P.R. 612, ¶ 42.  Crespo was not the proposing or deciding official in this matter.  The appellant failed to show Crespo or anyone else used other agency officials, such as the proposing official (Sutterfield), who did not testify at hearing, or the deciding official (Witte or Rivera), as their cat's paw[24] to effect the action for discriminatory or retaliatory purposes.  The resulting investigation supported that the appellant was absent from the office and then made misleading or false statements regarding those absences.  Despite the procedural deficiency of the agency's removal action, I find the appellant failed to show the agency's stated reasons for its actions unworthy of belief.  It is well settled that repeated and intentional AWOL is disruptive to an agency and is just cause for removal. *Davis v. Veterans Administration*, 792 F.2d 1111, 1113 (Fed. Cir. 1986); *Ajanaku v. Department of Defense*, 44 M.S.P.R. 350, 355 (1990).

I have also considered the appellant's claims that coworkers and investigators suspected him of other misconduct due, in part, to his national origin, and his suggestion that the OPR investigation that led to his removal was somehow discriminatory.  HR (Testimony of Appellant).  These investigations

---

[23] Moreover, on August 3, 2021, the agency removed Hardin based on charges of Failure to Follow Instructions, Failure to Provide Accurate Information on AUO Reports, AWOL, and Lack of Candor.  *Hardin v. Department of Homeland Security*, MSPB Docket No. DA-0752-21-0392-I-1, Initial Appeal File, Tab 1 (appeal pending).

[24] The Supreme Court has recognized liability under the "cat's paw" theory, which describes a case in which one *agency management official*, acting because of an improper animus, influences another agency official who is unaware of the improper animus when implementing a personnel action.  *See Staub v. Proctor Hospital*, 562 U.S. 411, 415-422 (2011).

fail to demonstrate the removal action at issue here was based on any discriminatory or retaliatory animus.  Further, the appellant acknowledged some of his misconduct, including that he told Crespo he was in the gym, or working in Houma, when he was not.  Thus, I find that, regardless of whether the agency would have proven its charges by preponderant evidence, which I need not decide here, its reasons for its removal action are not unworthy of belief.

In sum, the appellant offered unsupported and conclusory allegations to show the agency removed him because of a discriminatory or retaliatory basis. *See Romero v. Equal Employment Opportunity Commission*, 55 M.S.P.R. 527, 539 (1992) (appellant's mere allegation, unsupported by probative and credible evidence, does not prove discrimination).  He did not identify similarly situated employees outside of his protected group who were treated more favorably, or show the agency lied about its reason for taking the action, the agency's explanation was inconsistent, or the agency generally treats employees in his protected groups less favorably.  Accordingly, I find the appellant has not established by preponderant evidence that his race, national origin, religion, or prior EEO activity was a motivating factor in the agency's action.[25]  Moreover, even assuming the appellant's race, national origin, religion, or EEO complaint was a motivating factor in the removal action, I find the agency has demonstrated that it would have taken the removal action even if it lacked such a motive. *See* HR (Testimony of Rivera).

---

[25] I also find the appellant failed to show discrimination based on a disparate impact theory.  To establish a claim of disparate impact discrimination or retaliation, the appellant must identify a challenged employment practice and show the application of that practice created a disparate impact. *Stern v. Federal Trade Commission*, 46 M.S.P.R. 328, 333 (1990).  In other words, the appellant must present sufficient *statistical* evidence to prove the employment practice at issue fell more harshly on one group than another. *Hidalgo v. Department of Justice*, 93 M.S.P.R. 645, 653 (2003). Apart from conclusory statements, he presented no statistical evidence whatsoever to show employees within his protected groups suffer disproportionately from any specific employment practice.

<u>The record does not support the agency's decision was based on whistleblowing retaliation.</u>

The appellant contends the agency removed him in retaliation for disclosures and activity protected by the Whistleblower Protection Act (WPA) of 1989 and the Whistleblower Protection Enhancement Act (WPEA) of 2012. Specifically, the appellant claims the agency retaliated against him for an April 2016 disclosure that his government vehicle was not OSHA complaint.  IAF, Tab 17 at 12.   To meet his evidentiary burden, the appellant must prove by preponderant evidence: (1) he engaged in protected whistleblowing activity, i.e., activity protected under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (B), (C), or (D); and (2) the protected whistleblowing activity was a contributing factor[26] in the agency's decision to take or fail to take a personnel action.  *See Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014).

If the appellant proves by preponderant evidence his protected activity was a contributing factor in a covered personnel action, the agency must prove by clear and convincing evidence it would have taken the same action even absent the disclosure or other protected activity.  *See Horton v. Department of the Navy*, 66 F.3d 279, 283-84 (Fed. Cir. 1995); *see also* 5 C.F.R. § 1209.7.  In determining whether an agency meets this burden, the Board will consider the following factors:   the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

---

[26] Contributing factor means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action with respect to the individual making the disclosure.  5 C.F.R. § 1209.4(d).

On March 6, 2016, the appellant sent Crespo an email stating, "I need a vehicle (not my old van bc it's out of service)." IAF, Tab 48 at 85. Crespo responded, "That's all I can give you." *Id.* On May 21, 2016, the appellant sent a text message to Crespo, stating, "Pots and pans. Drives me crazy lol." IAF, Tab 29 at 50; HR (Appellant Testimony). He also included a video of the vehicle noise. *Id.; see also* IAF, Tabs 70-71. At hearing, the appellant attested that, right after he made the March and May 2016 complaints, Crespo retaliated against him by removing his home to work privileges and moving him to the back office. HR (Testimony of Appellant). I find, however, that the appellant's communications in March 2016 and May 2016 were not protected disclosure. A protected disclosure under the WPA/WPEA is a disclosure of information that an individual reasonably believed evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, abuse of authority, or a substantial and specific danger to public health or safety. *See* 5 U.S.C. § 2302(b)(8). The appellant's statements that his vehicle was old, out of service, or made loud noises that drove him crazy do not fall within any of those categories and are not protected disclosures under the law.[27] *See* 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (B), (C), or (D).

On October 11, 2016, the appellant informed Crespo that the noise in his vehicle exceeded recommended OSHA levels. IAF, Tab 35 at 127; IAF, Tab 45 at 59; HR (Testimony of Appellant). In the email, he told Crespo that his vehicle emits very loud noises, exceeding the permissible rate of 90 decibels for an 8

---

[27] The appellant contends that, after his March or May 2016 communications to Crespo about the vehicle, he faced immediate retaliation in that his office space was moved and his driving privileges were reduced. HR (Testimony of Appellant). These are not personnel actions before me, nor do they demonstrate that the subsequent removal action was caused by any retaliatory animus.

hour day, and 95 decibels for a 4 hour day, under OSHA guidelines.[28]  IAF, Tab 45 at 59.  A reasonable person in his position would believe his disclosure evidence a violation of law, rule, or regulation.  *See Scott v. Department of Justice*, 69 M.S.P.R. 211, 237 (1995).  Thus, I find the appellant made a protected disclosure in his October 11, 2016 email, under 5 U.S.C. § 2302(b)(8)(A)(i).

The appellant also showed his October 11, 2016, protected disclosure was a contributing factor to the removal action.  An appellant may demonstrate protected whistleblowing activity was a contributing factor in a personnel action by showing the official taking the action knew of the activity and the personnel action occurred within a period of time such that a reasonable person could conclude the protected activity was a contributing factor in the personnel action.  *Powers v. Department of the Navy*, 69 M.S.P.R. 150, 155 (1995).  Here, the appellant cited to his October 11, 2016, memo in his reply to the proposed removal.  IAF, Tab 44 at 6.  Thus, Rivera knew about this memo.  The Board has held that personnel actions taken within one to two years of the protected disclosure or activity satisfy the timing prong of the knowledge-timing test.  *See, e.g.*, *Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 15 (2011).  Witte indicated Rivera decided to sustain the appellant's removal on May 15, 2018, within two years of the appellant's disclosure.  *See* IAF, Tab 43 at 34-49.  Accordingly, I find the appellant satisfied the knowledge/timing test in demonstrating his October 11, 2016, memo was a contributing factor in Rivera's decision to remove him.

The agency must now prove by clear and convincing evidence it would have removed the appellant even absent his October 11, 2016, complaints about his vehicle.  *See Horton*, 66 F.3d at 283-84; *see also* 5 C.F.R. § 1209.7.  I find the agency presented clear and convincing evidence for its action.  With regard to the

---

[28] Vehicle noise emission standards are set forth in federal regulation and agency policy.  IAF, Tab 33 at 74-79.

strength of the agency's evidence in support of the action, it is notable the appellant stipulated to the key facts underlying the charges of AWOL, Lack of Candor, and Falsification.   Given the ample record evidence, it is clear the agency had reason to believe the appellant was AWOL, and the appellant did not claim that he was not AWOL.   It is undisputed he was scheduled to work, he did not report to work in Houma, and he did not have approved leave.   HR (Testimony of Appellant).   While he claimed to be teleworking from various locations or possibly exercising, he acknowledged he was not authorized to telework.   *Id.*; IAF, Tab 46 at 105, 143-44, 148-49, 155-56; Tab 47 at 4-5, 10-11. He also did not dispute that he lied to Crespo about his whereabouts or that he was attempting to hide the fact he was not working in the office.   *Id.* Accordingly, the first *Carr* factor weighs in favor of finding the agency would have removed the appellant in the absence of his whistleblowing activity.

As to the second *Carr* factor, the motives of the relevant agency officials to retaliate against the appellant must be considered.   *See Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 30 (2008).   Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees.   *See Whitmore v. Department of Labor*, 680 F.3d 1353, 1370-71 (Fed. Cir. 2012).   As an initial matter, I note that Crespo reported the appellant for misconduct in August 2016, *see* IAF, Tab 46 at 18, *before* the appellant's October 11, 2016, disclosure.   The fact the agency began responding to the appellant's conduct before his protected activity suggests that activity was not its motivation.   IAF, Tab 46 at 4-7.   Further, I find no evidence supporting any motive to retaliate on the part of Sutterfield (who did not testify), Rivera, or Witte.   The appellant's complaints about his vehicle did not implicate any of these individuals.   Both Witte and Rivera testified in a neutral manner about the removal action, and I find no indication they were hostile to the appellant for

expressing concerns about his vehicle.  HR (Testimony of Witte, Rivera).  They testified candidly and in a forthright manner.  *See Hillen*, 35 M.S.P.R. 453, 458 (witness demeanor is a factor in assessing credibility). Taking the record as a whole, I found no indication the removal action was motivated by a retaliatory animus due to the appellant's prior complaints about his vehicle.  Accordingly, the second *Carr* factor weighs in favor of holding the agency would have removed the appellant in the absence of his whistleblowing activity.

Accordingly, I conclude the agency provided clear and convincing evidence supporting the appellant's removal.[29]

## DECISION

The agency's action is REVERSED.[30]

## ORDER

I **ORDER** the agency to cancel the removal and to retroactively restore the appellant to the position he occupied prior to the removal action.  I find the status quo is a resignation effective **December 8, 2018**.  The agency also must credit back to the appellant any leave he was required to pay the agency, under the terms of the removal letter.   IAF, Tab 43 at 35.   This action must be accomplished no later than 20 calendar days after the date this initial decision becomes final.

---

[29] The agency failed to produce evidence on the third *Carr* factor.  Thus, it adds little to the overall analysis in this case, but if anything, tends to cut slightly against the agency. *See Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016) (citing *Whitmore*, 680 F.3d at 1373-74).

[30] When the Board orders an agency action canceled, the agency must return the appellant as nearly as possible to the *status quo ante*.  *Kerr v. National Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984); *Spates v. U.S. Postal Service*, 70 M.S.P.R. 438, 442 (1996).   *Status quo ante* relief requires, in most instances, restoring the appellant to the position he occupied prior to the removal action or placing him in a substantially equivalent position.  *See Conaway v. U.S. Postal Service*, 93 M.S.P.R. 6, ¶ 11 (2002).

I **ORDER** the agency to inform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied.  If not notified, appellant must ask the agency about its efforts to comply before filing a petition for enforcement with this office.

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  I **ORDER** the agency to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments, if any, resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## INTERIM RELIEF

If a petition for review is filed by either party, I **ORDER** the agency to provide interim relief to the appellant in accordance with 5 U.S.C. § 7701(b)(2)(A).  The relief shall be effective as of the date of this decision and will remain in effect until the decision of the Board becomes final.

Any petition for review or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the required interim relief or by satisfying the requirements of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B).  If the appellant challenges this certification, the Board will issue an order affording the agency the opportunity to submit evidence of its compliance.  If an agency petition or cross petition for review does not include this certification, or if the agency does not provide evidence of compliance in response to the Board's order, the Board may dismiss the agency's petition or cross petition for review on that

basis.

FOR THE BOARD:                    _____/S/_____
                                              Theresa J. Chung
                                              Administrative Judge

## ENFORCEMENT

If, after the agency has informed you that it has fully complied with this decision, you believe that there has not been full compliance, you may ask the Board to enforce its decision by filing a petition for enforcement with this office, describing specifically the reasons why you believe there is noncompliance. Your petition must include the date and results of any communications regarding compliance, and a statement showing that a copy of the petition was either mailed or hand-delivered to the agency.

Any petition for enforcement must be filed no more than 30 days after the date of service of the agency's notice that it has complied with the decision. If you believe that your petition is filed late, you should include a statement and evidence showing good cause for the delay and a request for an extension of time for filing.

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date. *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **November 8, 2021**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days

after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first.  You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review.  Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place.  Because a

majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time.  *See* 5 U.S.C. § 1203.  Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate.  The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

## Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date

you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt.  You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## ATTORNEY FEES

If no petition for review is filed, you may ask for the payment of attorney fees (plus costs, expert witness fees, and litigation expenses, where applicable) by filing a motion with this office as soon as possible, but no later than 60 calendar days after the date this initial decision becomes final.  Any such motion must be prepared in accordance with the provisions of 5 C.F.R. Part 1201, Subpart H, and applicable case law.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.   5 U.S.C.  § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.   Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within

**60 days** of the date this decision becomes final under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

|  | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |
|---|---|

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

AHMED AHMED,
                        Appellant,

                v.

DEPARTMENT OF HOMELAND
        SECURITY,
                        Agency.

DOCKET NUMBER
DA-0752-21-0003-I-1

DATE: October 4, 2021

Justin Schnitzer, Esquire, Houston, Texas, for the appellant.

Cary E. Zuk, Esquire, San Francisco, California, and Michele Kenney,
    Esquire, San Diego, California, for the agency.

**BEFORE**
Theresa J. Chung
Administrative Judge

**INITIAL DECISION**

**INTRODUCTION**

On October 1, 2020, the appellant filed this appeal.  Initial Appeal File
(IAF), Tab 1.  The agency moved to dismiss based on lack of Board jurisdiction.
IAF, Tab 11.  There are outstanding questions of timeliness and Board
jurisdiction.[1]

---

[1] The Board issued an Order to the appellant regarding the timeliness of the appeal.
IAF, Tab 3.  However, because this appeal is dismissed for lack of appellate
jurisdiction, I make no findings on the issue of timeliness.

Exhibit A-6

2

The appellant withdrew his request for a hearing.  IAF, Tab 22.  The record in this matter is closed.  IAF, Tabs 29, 41, 42, 50.  Based on the following findings and analysis, I GRANT the agency's motion and DISMISS this appeal for lack of Board appellate jurisdiction.

## ANALYSIS AND FINDINGS

Background

The following facts are undisputed.  The agency employed the appellant as a Deportation Officer, GS-1801-12, with a duty station of Houma, Louisiana. IAF, Tab 13 at 51.  On May 11, 2017, the appellant filed a formal Equal Employment Opportunity (EEO) complaint of discrimination, Agency Case No. HS-ICE-00782-2017, alleging discrimination based on his national origin (Egyptian/Arab), religion (Muslim), and reprisal (prior EEO activity).  *Id.* at 64-70.

On November 6, 2017, the agency proposed the appellant's removal based on charges of Absence Without Leave, Lack of Candor, and Falsification.  IAF, Tab 9 at 19-27.  On March 7, 2018, the appellant submitted a written response to the proposed removal.  *Id.* at 29-48.

On June 2, 2018, the parties entered into a settlement agreement of the appellant's EEO complaint.  *Id.* at 50-54.  The appellant agreed to withdraw his complaint before the Equal Employment Opportunity Commission (EEOC), to waive claims against the agency, and to resign on or before December 8, 2018. *Id.* at 50-51.  The agency agreed to rescind the Notice of Proposed Removal, dated November 6, 2017; to allow the appellant to continue working until July 6, 2018; to use annual leave between July 6, 2018, and July 20, 2018; and to remain on Leave without Pay status until December 8, 2018.  *Id.* at 51-52.  The agency processed the appellant's resignation, effective December 8, 2018.  IAF, Tab 13 at 51-52, Tab 44 at 8.

Section 9 of the settlement agreement is entitled, "NONCOMPLIANCE PROCEDURE." IAF, Tab 9 at 53. Under this section, if the appellant (referred to in the agreement as the "Complainant") believed the agency failed to comply with the agreement, he was to notify the U.S. Department of Homeland Security Office for Civil Rights and Civil Liberties (CRCL) of the alleged noncompliance. *Id.* Further, under the agreement:

> Complainant may request that the specific term(s) of the Settlement Agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased. CRCL will attempt to resolve the matter and respond to Complainant, in writing. If CRCL has not responded to Complainant, in writing, or if Complainant is not satisfied with CRCL's attempt to resolve the matter, Complainant may appeal to the Equal Employment Opportunity Commission for a determination as to whether the Agency has complied with the terms of the Settlement Agreement. Complainant may file such an appeal beginning 35 calendar days after he has served CRCL with the allegations of noncompliance, but no later than 30 calendar days after receipt of CRCL's written decision on noncompliance. Complainant must serve a copy of the appeal on the Agency. The parties agree that monetary damages are not available to either party as a remedy for a breach of this Settlement Agreement.

*Id.*

On October 20, 2018, the appellant contacted CRCL, alleging the agency breached the settlement agreement. *Id.* at 57. This issue was briefed and handled pursuant to EEO compliance procedures under 29 C.F.R. § 1614.504(b), resulting in a Breach Decision by CRCL on November 29, 2018. *Id.* at 56. In its Breach Decision, CRCL concluded the agency had "substantially performed in accordance with the terms of the settlement agreement." *Id.* CRCL informed the appellant of his right to appeal to the EEOC or to file a civil action in Federal District Court. *Id.* CRCL further provided the appellant with a copy of EEOC Form 573 for appellant's submission to EEOC's Office of Federal Operations, should he decide to file an appeal. *Id.*

4

Pursuant to EEO regulations, the appellant then filed a timely appeal with the EEOC's Office of Federal Operations (OFO). *Id.* at 62. On March 3, 2020, the OFO issued a decision, concluding the parties had made an "erroneous assumption" with regard to the agreement, and that there had been a mutual mistake. *Id.* at 67. Therefore, the OFO remanded the action to the agency to notify the appellant of several options with regard to the settlement agreement, including the option to void the settlement agreement and resume processing of his EEO complaint, which would require returning any benefits he received from the agency under the agreement. *Id.* at 67-68.

Under the heading, "Implementation of the Commission's Decision," the OFO decision stated:

> If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File a Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). **If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated.** See 29 C.F.R. § 1614.409.

*Id.* at 68 (emphasis as in original). Further, the OFO decision also set forth the parties' right to request reconsideration. *Id.* at 68-69. The OFO decision also explained the appellant's ability to file a civil action in U.S. District Court "on both the portion of [his] complaint which the Commission has affirmed and that portion of the complaint which has been remanded for continued administrative processing." *Id.* at 69.

On March 12, 2020, the appellant informed the agency he elected to void the settlement agreement and to reinstate his underlying EEO complaint. *Id.* at 72. On August 21, 2020, the appellant filed a Petition for Enforcement with the OFO, asking the OFO to require the agency to withdraw his resignation and return the appellant to the position he was in before the agreement. *Id.* at 74, 79. The appellant argued the agency improperly failed to rescind or reverse his resignation and restore him to his position. *Id.* at 77. The appellant requested retroactive reinstatement with back pay and benefits. *Id.* at 79.

On August 27, 2020, the agency issued a report to the Compliance Officer, EEOC, OFO, regarding its compliance with the OFO decision. *Id.* at 84-85. The agency stated it had returned the appellant's EEO complaint to the same point in processing prior to the settlement agreement. *Id.* at 85. On September 4, 2020, OFO sent a closure letter to the appellant, stating it had ceased compliance monitoring, and "the recent request for a Petition for Enforcement will not be docketed since the issues in this case will be addressed by the [EEOC] administrative judge." *Id.* at 88. OFO informed the parties the appellant's EEO complaint was forwarded to an EEOC Administrative Judge for a hearing (EEOC No. 420-2020-00231X).[2] *Id.* The appellant asked OFO to keep the "Compliance monitoring" open and docket his Petition for Enforcement. *Id.* at 90-91. OFO management reviewed the appellant's case. *Id.* at 93. On September 21, 2020, the Commission advised the appellant the EEOC had decided *not* to docket a Petition for Enforcement, and that the appellant should communicate "all of the issues of this case with the [EEOC] Administrative Judge." *Id.* at 97-98.

On October 1, 2020, the appellant filed this Board appeal. IAF, Tab 1. In his appeal, he noted he was appealing a "Failure to restore/reemploy/reinstate or improper restoration/reemployment reinstatement," and a "Constructive

---

[2] This appears to be a typo as the appellant's EEOC complaint was EEOC No. 460-2020-00231X. IAF, Tab 13 at 23, Tab 51 at 7, 12.

Discharge." *Id.* at 7.  Further, he stated the agency had failed to reinstate him to his position.  *Id.*  I found the appellant had made a nonfrivolous allegation of Board jurisdiction and scheduled a hearing.  IAF, Tab 12.  The appellant withdrew his request for a hearing.  IAF, Tab 22.

On November 20, 2020, the agency removed the appellant, stating the removal was retroactive to July 6, 2018.[3]  IAF, Tab 17 at 4.  The agency filed a motion to dismiss this Board appeal as moot.  *Id.*  The agency argued the removal action cancelled his December 8, 2018, resignation, and that his Board appeal therefore was moot.  *Id.* at 5; *see also* IAF, Tab 23.  The appellant opposed this motion, contending the agency constructively discharged him by failing to reinstate him.  IAF, Tab 34 at 17.  Further, the appellant argued the retroactive removal action was improper.[4]  *Id.*

In the course of the appellant's reinstated EEOC complaint (EEOC No. 460-2020-00231X), on March 18, 2021, the appellant accepted the Agency's Offer of Resolution.[5]  IAF, Tab 51 at 7-11.  Under the Offer of Resolution, the appellant's acceptance of the offer "fully resolve[d] EEOC case number 460-2020-00231X … and result[ed] in the permanent cessation of the processing of his complaint."  *Id.* at 9.  The parties further agreed to raise any breach issues with CRCL, and that the EEOC would have jurisdiction over any breach issues. *Id.*  Pursuant to that Offer of Resolution, the EEOC Administrative Judge

---

[3] The appellant filed a separate appeal regarding his removal.  *Ahmed v. Department of Homeland Security*, MSPB Docket No. DA-0752-21-0104-I-1.

[4] Because I dismiss this appeal for lack of Board jurisdiction, I need not resolve the question of whether this appeal is moot due to the retroactive removal.  IAF, Tabs 17, 18.

[5] Under 29 C.F.R. § 1614.109(c) and EEOC Management Directive 110, Chapter 6, Section XIII, acceptance of an offer of resolution results in a full settlement, and processing of the pending EEOC matter ceases.

dismissed EEOC No. 460-2020-00231X with prejudice on April 8, 2021.  *Id.* at 12-14.

<u>The Board Lacks Jurisdiction Over This Action.</u>

The appellant has the burden of proving, by preponderant evidence,[6] his appeal is within the Board's jurisdiction.  *See* 5 C.F.R. § 1201.56(b)(2)(i)(A).

The appellant argues the agency improperly failed to restore him to the *status quo ante* after he chose to rescind the settlement agreement, and that the agency thereby subjected him to a constructive discharge.  IAF, Tab 46 at 9.  He argues the Board has jurisdiction on this basis.  *Id.*  He states, "the Board should decide here that the Agency failed to follow the law and restore Appellant to *status quo ante* upon voidance of that agreement."  *Id.* at 10.  The agency's "failure to place Appellant back to work constituted a constructive removal…." *Id.*

In essence, the appellant claims the agency's failure to reinstate him—after he elected to invalidate the parties' settlement agreement—is an appealable action before the Board.  He argues the agency's failure to reinstate him violates the OFO order, and further suggests the OFO's processing of his Petition for Enforcement was improper.  Under these unique facts and circumstances, I find the appellant has not established Board jurisdiction.

Generally, the proper forum for addressing allegations of bad faith, compliance, and enforcement, with regard to a settlement agreement of an EEOC complaint is the OFO/EEOC, and not the Board.  *See* 29 C.F.R. § 1614.504.  This is reflected in the fact the appellant initially requested reinstatement through the OFO/EEOC.  Here, where the appellant's requested relief stems primarily from OFO/EEOC's processing of his Petition for Enforcement and a settlement

---

[6] Preponderant evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is  more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

agreement executed in that forum, I find the Board lacks jurisdiction over his claims. Rather, the EEOC appears to be the proper forum for the appellant's claims regarding his resignation, and the appellant should seek review of any OFO determinations through those processes set forth by the EEOC.[7] In this vein, the Board gives force and effect to a term in an agreement that identifies 29 C.F.R. § 1614.504 as the exclusive process to seek enforcement or review from an allegation of breach. *See, e.g.*, *Fuentes v. Department of Health & Human Services*, 111 M.S.P.R. 246, ¶ 3 (2009) (the plain language in the agreement demonstrates the parties intended to have the enforcement resolved in an action taken pursuant to 29 C.F.R. § 1614.504). Under the unique circumstances of this appeal, the appellant has failed to establish his burden of demonstrating Board jurisdiction over his claims. Insofar as the parties have resolved and voluntarily concluded the proceedings on the appellant's pending EEO complaint, that resolution further calls into question the Board's jurisdiction. The Board generally lacks authority to enforce or invalidate a settlement agreement in another forum, and the Board generally does not allow an appeal that amounts to a collateral attack on a settlement agreement. *See Johnson v. U.S. Postal Service*, 108 M.S.P.R. 502, ¶ 8, n. 5 (2008), *aff'd*, 315 F. App'x 274 (Fed. Cir. March 9, 2009).

This is essentially an EEOC/OFO compliance matter over which the Board lacks jurisdiction. The appellant states that, because of the "EEOC OFO's refusal to docket his PFE," he is "unable to have any independent review of the Agency's failure to reinstate his employment and return him to the *status quo ante*." IAF, Tab 8 at 10. However, the inability to obtain relief before the EEOC does not confer Board jurisdiction over this matter.

---

[7] The EEOC/OFO's findings on the parties' settlement agreement, and its manner of processing the appellant's complaints, are not issues before me in this appeal, and I lack authority to adjudicate such claims.

Based on a careful review of the record, I find the appellant has not established the Board's jurisdiction over this appeal.  Accordingly, the appeal must be dismissed for lack of jurisdiction.

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:                    /S/
                                  Theresa J. Chung
                                  Administrative Judge

### NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date.  *See* 5 C.F.R. § 1201.112(a)(4).

### NOTICE TO APPELLANT

This initial decision will become final on **November 8, 2021**, unless a petition for review is filed by that date.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first.  You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below.  The paragraphs that follow tell you how and when to file with the Board or one of

those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review.  Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place.  Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time.  *See* 5 U.S.C. § 1203.  Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate.  The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

## Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic

filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.   5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.   Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date this decision becomes final</u>.   5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision becomes final</u> as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3)** **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx